[Crim. No. 4543.   Second Dist., Div. One.   Jan. 31, 1951.]

THE PEOPLE, Respondent, v. MEYER MYRON KULWIN et al., Appellants.

John J. Bradley and Max Solomon for Appellants.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County, defendants were charged with the crime of conspiracy to violate subdivisions 1, 2, 3, 4, and 6 of section 337a of the Penal Code, in that between the dates of March 6, 1950 and March 29, 1950 they conspired to commit acts forbidden under said section and the foregoing subdivisions thereof. Defendant Philip Klein was also charged with a prior felony conviction in the State of Kentucky allegedly on or about March 9, 1932, and another prior felony conviction in the District Court of the United States, in and for the northern district of the State of California on or about August 3, 1934, upon which convictions said defendant served a term of imprisonment in a state and federal prison.

Each defendant pleaded not guilty to the offenses charged in the information, and appellant Philip Klein denied the prior convictions charged against him. Trial by jury was waived by all defendants and the cause was submitted by stipulation upon the transcript of the preliminary examination together with additional evidence presented by the prosecution. None of the defendants took the stand in his own own behalf nor was any evidence presented in their defense.

The court found each defendant guilty as charged in the information and granted leave to file an application for probation. No finding was made as to the alleged prior convictions of defendant Philip Klein. A motion for a new trial was made on behalf of all defendants and denied.

The application for probation was denied as to defendant Philip Klein and he was sentenced to the county jail for

a term of one year. As to the remaining defendants, proceedings were ordered suspended and probation was granted, conditioned, among other things, that such defendants serve terms of imprisonment in the county jail. Each defendant has appealed from the "judgment" and from the "order denying a motion for a new trial."

█ Since the court did not pronounce judgment against the defendants other than Philip Klein, their purported appeals from the judgment must be dismissed, and consideration will be given only to the points raised by them as ground for reversal of the orders denying a new trial (*People* v. *Steccone*, 36 Cal.2d 234, 235 [223 P.2d 17]).

The factual situation which gives rise to this prosecution may be summarized by saying that Benno Wolfer, a watchmaker, rented premises at 5063 West Pico Boulevard in the city and county of Los Angeles. The premises were divided by partitions into three parts, and he sublet the rear two portions of the premises to defendant Joe Kline. This rear portion of the premises was called the Swiss Musical Shop and had an entrance from the rear. Defendant Kline had been a sublessee thereof since December 1, 1949.

A microphone had been placed in one of the partitions and the wire from the instrument led to a fire station some 1,600 feet away where there was installed a recording instrument. D. B. F. Williams, a police officer of the city of Los Angeles, went to the recording station at 3 o'clock on the afternoon of March 10, 1950. Commencing with March 11, 1950, he was at the receiver daily, with the exception of Sundays, from 8 o'clock in the morning to approximately 6 o'clock in the evening, and on some evenings remained there until 8 or 9 o'clock up to March 29, 1950.

Following the arrest of defendants, he talked to each of them and testified he recognized their voices as the ones he heard over the receiver in the fire station.

We deem it unnecessary to here set forth in detail the many conversations to which Officer Williams testified as having been heard by him over the foregoing receiver in the fire station. Suffice it to say that if such testimony was admissible it was sufficient to substantiate the conviction with numerous corroborative facts, to which we shall hereinafter refer, evidencing defendants' collaboration in bookmaking activities.

██ We are consonant of the rule that before the evidence of the acts and declarations of an alleged coconspirator is admissible against the others, the fact of the conspiracy must be proved. However, the existence of a conspiracy need be proved only to the extent of establishing prima facie evidence of the fact. In a civil action proof by a preponderance of the evidence is not required, nor is proof beyond a reasonable doubt required in a criminal action. This latter doctrine applies only to the issue of guilt.

On this appeal appellants urge a reversal of the judgment on the ground that (1) the decision of the trial judge finding them guilty is contrary to law in that the trial court denied the appellants' request for "the best evidence"; and (2) the verdict is contrary to the evidence.

After testifying that he could identify the names of the men and the voices he overheard over the foregoing receiver in the fire station, and upon being asked to relate the things that he heard over the receiver in the fire station and to identify the voices which he recognized, objection was made on the ground that the recordings were "the best evidence," and that the officer's testimony was not the "best evidence." The district attorney advised the court that he had the recordings and invited defendants and their counsel to listen to the recordings consisting of 47 reels of 30 minutes each, and that the recordings were available to defendants if they desired to go to the police department and hear them. It might here be noted that this objection was first made at the preliminary examination, was overruled by the committing magistrate, and the ruling was sustained by the trial judge.

Although the case was submitted upon the transcript of the preliminary examination, Officer Williams was nevertheless called to testify in person at the trial. To assist him in his testimony he used notes that he transcribed from the various recordings, these notes being made after the arrest and being taken from the reels. The officer used these notes to assist him in his testimony, as well as notes made at the time of his conversations with the respective defendants. No objection was made to the method by which the officer testified. Appellants' contention on this appeal is that the decision of the court is contrary to the law in that the trial court committed error in not requiring production of the allegedly "best evidence" (the recordings) as to what took place at the times and upon the occasions testified to by the officer.

We are impressed that the so-called "best evidence" rule has no application to the circumstances here involved. We are not here confronted with a situation wherein the witness was testifying to the contents of a document but are confronted with a situation in which the officer who testified at the time of trial actually overheard the conversations to which he testified. ▮ Where one testifies to what he has seen or heard such testimony is primary evidence, regardless of whether such fact or facts are reduced to writing or incorporated in a record or document. In other words, the witness is not testifying as to what the writing contains, but as to what he observed and knew because he heard it. While the recordings might be more reliable and satisfactory evidence under circumstances than testimony from memory, the latter is not rendered incompetent by. the fact of the existence of the former (*Meyer* v. *Foster,* 147 Cal. 166, 169 [81 P. 402] ; *People* v. *Curtis,* 50 Cal. 95; *Maguire* v. *Cunningham,* 64 Cal. App. 536, 549 [222 P. 838] ). ▮ In the instant case the police officer was an actor in the occurrences concerning which he was testifying and having heard the words and the voices of other actors in the occurrence, his testimony, upon the basic principles of evidence, may well be characterized as primary. The fact that the recordings were available furnishes no objection to the introduction of portions or all evidence of what the officer actually heard.

In the light of the foregoing it cannot be said that the trial judge abused his discretion in refusing to order the recordings brought in, particularly where appellants had ample opportunity to examine them and yet made no attempt to refute the testimony of the officer either by taking the stand themselves or making any offer of proof.

▮ Appellants' contention that the testimony of Officer Williams was only as to fragmentary parts of alleged conversations on the taped recordings is not borne out by the record which shows that there was no continuous conversation during the 19 days under which the establishment in question was under surveillance, but there was a series of conversations, and that as to each conversation to which the officer testified he stated that he was giving substantially all of what he overheard.

No attempt was made by cross-examination to establish that there was any further conversation; appellants presented

no evidence that any material portions of the conversations were omitted; nor was any offer of proof made that such omissions existed. And this, although the recordings were available to defendants and their counsel between the time of the preliminary examination and the time of the court action.

The objection that sufficient foundation was not laid to entitle the officer to identify the voices he heard went to the weight rather than the admissibility of his evidence. He testified that subsequent to the arrest of appellants he talked with each of them and recognized their respective voices as those he had heard over the receiver in the fire station. Manifestly, no prejudice occurred to appellants by reason of the trial court's ruling in this regard. It is noteworthy that during the trial when appellants demanded the right to test Officer Williams' ability to recognize voices with an experiment in court by ''asking Officer Williams to turn around and have some of the defendants read and see if he can identify them,'' and permission for such experiment was granted by the court, appellants declined to proceed therewith.

Finally, appellants contend that whether or not the testimony of Officer Williams is considered, the conviction is without legal support in the evidence. An examination of the evidence in the instant case must be made in the light of the fact that appellants neither took the stand in their own defense nor produced any witnesses. The trier of fact was therefore free to consider the failure of appellants to explain or deny evidence against them (*People* v. *Adamson,* 27 Cal.2d 478, 486, 487 [165 P.2d 3]).

It is generally recognized that a conspiracy can only be established by circumstantial evidence ''for, as the courts have said, it is not often that the direct fact of an unlawful design which is the essence of a conspiracy can be proved otherwise than by the establishment of independent facts, bearing more or less closely or remotely upon the common design (5 Cal.Jur. 521); and it is not necessary to show that the parties met and actually agreed to undertake the performance of the unlawful acts, . . . nor that they had previously arranged a detailed plan among them for the execution of the conspiracy. (Citing authority).'' (*People* v. *Sampsell,* 104 Cal.App. 431, 438, 439 [286 P. 434].)

The existence of a conspiracy being a question of fact, it is sufficient if the circumstances proved satisfy the trier of

fact beyond a reasonable doubt, to whom is also left the weight and sufficiency of the evidence.

In the case now engaging our attention, remembering that appellants offered no witnesses, and did not take the stand, there is practically no conflict in the record concerning the facts involved.

The Pico Boulevard premises were rented by appellant Joseph Kline although the telephone bill was not only paid by him but also by appellant Kulwin. In the absence of an explanation this fact could be taken into consideration by the trial judge in concluding that there was an agreement between these two appellants, inasmuch as there would be no reason for one of them to participate in the payment of the telephone bill of another, particularly in the absence of any explanation. The rear portion of the premises was called "The Swiss Musical Shop" and had an entrance from the rear, although no business in the sale or repair of clocks was carried on there. In the absence of some explanation the trial judge would be warranted in concluding that this was merely a subterfuge for illegal activities.

The testimony of Officer Williams established that during the period from March 10 to March 29, the date of arrest, the foregoing premises were frequented by all of the appellants, and that each of them freely used the telephone for incoming and outgoing calls, all of which authorized an inference that their presence therein was not of a social nature. It was also established that each of the appellants, with the exception of Miller, took bets over the telephone. At the time of the arrest a scratch sheet and note pad were found with appellant Kulwin's handwriting on them, reasonably indicating that he had recorded bets, and a piece of paper was picked up from the floor in front of appellant Joseph Kline with his handwriting on it indicating that he had recorded bets for March 29 on it.

Another noteworthy factor in connection with the character of the premises is that after the arrest, police officers continued to answer the telephone and to take bets from persons calling in.

Concerning the premises occupied by appellant Miller there would seem to be little question about the character of this location, for at the time of the arrest Miller was seated at a table on which was a telephone and in front of him were the markers and California Digest used in the recording of

bets while the testimony of expert witnesses established that the use and purpose of such papers was for recording bets. Again, the arresting officers, while on the premises, continued to answer the telephone and to take bets from persons on the other end of the line.

Concerning the connection between appellant Miller and the Long Beach Boulevard premises occupied by him, with the Pico Boulevard premises occupied by the other appellants, the testimony of Officer Williams established that Miller also frequented the Pico Boulevard premises. It was also established that incoming calls were received by a party named "Nick" and the fact that appellant Miller's name was Nicholas, as well as other circumstances, fairly justified an inference that the calls were coming to the latter. There is further evidence that when appellant Kulwin called the Long Beach Boulevard address he hung up when he failed to get appellant Miller and he was in fact talking to the arresting officer instead. Furthermore, when appellant Miller was released by the arresting officer he immediately proceeded to the vicinity of the Pico Boulevard premises to meet one of the other appellants and drove away only after failing to make such contact. According to his own admission, after his release, he took the betting papers not seized by the officers, to appellant Kulwin's home, where the wife of the latter destroyed them. The evidence also established that both the Pico and Long Beach Boulevard premises used the same "lay-off" number when bets were received that were too high for them to handle. Appellant Miller's statement clearly connected him with the operations of the conspiracy at the Pico Boulevard premises.

Other circumstances which were before the trial judge were the address book found on appellant Kulwin which contained the names and telephone numbers of appellants Joseph Kline and Louis Lendzen. Also, on the day following the arrest of appellants Kulwin and Joseph Kline, betting markers containing the handwriting of appellants Kulwin and Miller were found in appellant Philip Klein's apartment. When these were called to the attention of the last-named appellant, he at first maintained they were "old markers" although they were within a 10-day period. He then stated that he did not know how they got into his apartment but that even if he did he wouldn't tell the officers.

Appellants contend that the mere fact that bookmakers use the same premises or frequent the same location does not

indicate a conspiracy, and can be easily explained on the theory that they might be competitors, simply using each other's names or place of business for the purpose of gaining patronage or obtaining credit. In the absence of some evidence explaining that such was the purpose and object of the appellants in the instant case, the trial court was not required to indulge in such an inference. ■ The law does not require that coconspirators in a conspiracy to commit acts forbidden by section 337a of the Penal Code must be partners in legal contemplation. If by a common agreement they determine to use the same premises and facilities, cooperate with each other, they would be conspirators even though they did not share in each other's profits and losses. The gist of the conspiracy is the agreement to commit the crime, and the fact that the conspirators might be business competitors is immaterial.

The discussions heard by the police concerning bookmaking payoffs on various races, association of the appellants as well as other circumstances hereinbefore adverted to, all warranted the trial court in finding the existence of a conspiracy.

Although standing alone as bits of isolated evidence, some of the foregoing testimony with reference to the activities of appellants might be entitled to but little weight, nevertheless their evidentiary value as a connecting link along with other incriminating factors, must be recognized. And while it is true that conspiracies cannot be established by mere suspicion, nor can a defendant's failure to testify as to facts within his knowledge be used to supply failure of proof by the prosecution, such is not the case here. The record discloses numerous corroborative facts tending to show appellants' collaboration in bookmaking activities at their respective establishments.

■ Holding as we do that the evidence herein set forth, aside from any admissions of appellants, was sufficient to make out a prima facie case of conspiracy against them, it was not error for the trial court to admit against all appellants the evidence of the acts and declarations of the alleged conspirators in furtherance of the conspiracy.

When all of the legally admitted testimony is considered in connection with the prima facie case we are satisfied that the evidence was ample to sustain the finding by the trial judge that all appellants were guilty of the crime charged against them.

For the foregoing reasons, the judgment and the order

denying appellant Philip Klein's motion for a new trial are, and each is affirmed. The appeals of the remaining defendants from the alleged judgment are dismissed, and the orders denying their motions for a new trial are affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied February 13, 1951.