[Crim. No. 5580. In Bank. June 25, 1954.]

THE PEOPLE, Respondent, v. WILLIAM CLYDE
ROBINSON, Appellant.

134

Samuelson & Buck and Clarence Hengel for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

SPENCE, J.—Defendant and one Leon Wayne Schaefer were jointly charged in count one of an information with the crime of conspiracy to violate section 337a of the Penal Code and in count two with the violation of subdivision 3 of said section 337a (bookmaking). Schaefer died before the trial. The jury found defendant Robinson guilty on count one but not guilty on count two. Defendant appeals from the judgment of conviction entered on count one and from the order denying his motion for a new trial. As ground for reversal, he urges these points: (1) insufficiency of the evidence to support the conviction on the conspiracy charge; (2) error in the admission in evidence of the declarations of the deceased coconspirator Schaefer to a police officer; (3) inconsistency of the guilty verdict on count one with the not guilty verdict on count two; and (4) error in the court's failure to give an instruction on its own motion as to the necessity for corroboration of the testimony of an accomplice. (Pen. Code, § 1111.) There is no merit in these objections.

The evidence on behalf of the People consisted of the testimony of Officers Jacobsen and Hermansen of the Long Beach Police Department. It appears that Jacobsen, pursuant to information as to bookmaking activities of Schaefer, met the latter on the street in Long Beach. He told Schaefer that he was operating a "little book"; that his business was getting too large, and that he was looking for a place to "lay off" excessive bets. Schaefer said that he could handle these

bets through a "big bookmaker." They agreed to meet the next day, October 23, at 2:30 p. m. Upon meeting as arranged, Jacobsen gave Schaefer $15 along with a slip of paper bearing the names of the horses running at Bay Meadows, telling Schaefer that he wanted to play $5.00 to win on each of the three horses. They agreed to meet the next day if Jacobsen had a "pay-off." The next day, October 24, they did meet and Schaefer gave Jacobsen $20 as winnings on the previous day's bets. Jacobsen said that he had more bets for that day, and he gave Schaefer $20 in currency (one 10-dollar bill and 10 one-dollar bills) along with another slip of paper bearing the names of four horses running that day. Jacobsen had recorded the serial numbers of the bills and had treated the bills with a fluorescent powder which would rub off on the hands of anyone handling them and would be visible under ultraviolet light. Jacobsen then left Schaefer and proceeded to a café in Long Beach where defendant Robinson was employed as a bartender. Upon arrival there, Jacobsen saw Officer Hermansen with Robinson and Schaefer, and he saw money in the hands of Robinson.

Inspector Hermansen testified that he had worked with Officer Jacobsen on October 24 in preparing the list of four horses which was given to Schaefer that day; that he then followed Schaefer to the café, where Robinson worked behind the bar, and observed Schaefer and Robinson in conversation; that he then saw Schaefer take from his left rear hip pocket and pass to Robinson what appeared to be the money and paper given him by Jacobsen, and that Robinson took the roll—the money with the paper wrapped around it—and thumbed through it; that he recognized the paper in Robinson's hands as that which Jacobsen had torn from his notebook; that he then moved to arrest Robinson but due to the presence of several patrons at the bar and the fact that Hermansen also stopped to detain a person leaving the telephone booth, Robinson was out of Hermansen's sight for a few seconds; that when arrested, Robinson was searched and a roll of bills was disclosed but none was a marked one, and the slip of paper, or betting marker, containing the names of the horses could not be found. Hermansen went to his car to get the ultraviolet machine, leaving Jacobsen, who had meanwhile arrived at the bar, with Robinson. When Hermansen returned, he saw a glass with some money in it before Robinson, who was sitting at a cocktail table. Jacobsen stated that he saw Robinson place the money in the glass.

The money was examined and found to contain, in part, the bills with the fluorescent powder on them and bearing the recorded serial numbers. Traces of the fluorescent powder were found on the hands of both Schaefer and Robinson and on the material near Schaefer's left rear pocket. An "O" sheet (a paper on which were recorded the names of bettors, the amounts to be paid to and collected from them, together with the total "book" made for that day) was found on Robinson's person. The "O" sheet had the name "Leo" written on it, and Schaefer's first name was "Leon."

Robinson testified in his own behalf. He admitted that he had received money from Schaefer on the day in question but claimed that he had not received it for bookmaking purposes. He explained his possession of the "O" sheet by stating that he had picked it up from the floor. He claimed that he did not know what an "O" sheet was, despite the admission of a prior conviction of bookmaking and former work as a bookmaker for several years. Robinson denied having had any conversation that day with Schaefer concerning the placement of bets on the four horses or horse racing. He maintained at the trial, as he had in conversation with the officers following his arrest, that there was no marker or slip of paper around the money when Schaefer gave it to him.

Upon this record appellant Robinson unavailingly argues that the evidence is insufficient to sustain the conviction on the conspiracy count. ■ A conspiracy can generally be established only by circumstantial evidence. It is not often that the direct fact of a common unlawful design can be proved other than by the establishment of independent facts bearing on such design. (*People* v. *Kulwin,* 102 Cal.App.2d 104, 110 [226 P.2d 672].) ■ While mere association or suspicion will not suffice to establish a conspiracy (11 Cal.Jur. 2d 252, § 30; *Dong Haw* v. *Superior Court,* 81 Cal.App.2d 153, 158 [183 P.2d 724]), here more than that was shown by the evidence to warrant the jury's inference that a plan and agreement existed between appellant and Schaefer to carry on a bookmaking enterprise, and that the acts performed by them were in accordance with and in furtherance of their unlawful plan and agreement. (*People* v. *Sica,* 112 Cal.App. 2d 574, 581 [247 P.2d 72].) ■ The decision of the jury, which has been approved by the trial judge in the denial of a motion for a new trial, will not be set aside on appeal unless there is no substantial evidence upon any hypothesis whatsoever to support the verdict of the jury and the conclusion

of the trial court. (*People* v. *Yant*, 26 Cal.App.2d 725, 737 [80 P.2d 506].)

Here it appears that after Schaefer had accepted the fluorescent-powdered $20 on October 24 from Officer Jacobsen, he went directly to the café where appellant worked, and delivered the marked money to appellant. There was evidence that at the time of such delivery, this money was wrapped in a white slip of paper, the betting marker, containing the names of horses upon which the bets were placed for that day. When appellant was arrested and his hands examined, they were found to contain the powder which had been placed on the marked currency. Appellant attempted to rid himself of these bills but was prevented by the arresting officers. The betting marker was apparently disposed of, although it was seen in appellant's hands after Schaefer had given it to him. Except for appellant and Schaefer, other persons in the café did not have the iridescent powder on their hands. When questioned by the officers concerning the money, appellant gave conflicting and ambiguous answers and then in the face of these contradictory responses, stated, "Neither one is right, it doesn't matter anyway." Finally, on appellant's person was found the "O" sheet, on which were recorded the names of the persons who had bet on the horses, the amounts to be paid such bettors, the amounts collected, and the amount the "book" made that day. This evidence was sufficient to establish the corpus delicti, and to connect appellant with the conspiracy charged against him. (*People* v. *Griffin*, 98 Cal.App.2d 1, 46-47 [219 P.2d 519].)

There was no error in admitting into evidence the declarations and statements made by the coconspirator Schaefer outside the presence of appellant. Since there was prima facie proof of the existence of a conspiracy, testimony concerning Schaefer's statements in furtherance of the conspiracy, though made in the absence of appellant, was admissible as an exception to the hearsay rule. (Code Civ. Proc., § 1870, subds. 6, 7; *People* v. *Collier*, 111 Cal.App. 215, 240 [295 P. 898]; *People* v. *Curtis*, 106 Cal.App.2d 321, 325-326 [235 P.2d 51].) Appellant recognizes that the order of proof is within the sound discretion of the trial court (*People* v. *Ferlin*, 203 Cal. 587, 599 [265 P. 230]; *People* v. *Griffin, supra*, 98 Cal.App.2d 1, 47-48), and he does not challenge the procedure in this regard. It is true that Schaefer died before the trial and the statements allegedly made by him to Officer Jacobsen were related to the jury by the latter. While such evidence per-

taining to statements of a deceased person is said "to be in its nature the weakest and most unsatisfactory" (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 560 [299 P. 529]), nevertheless the credibility of the witness narrating such statements and their evidentiary value were matters for the triers of fact to determine. (*Khoury* v. *Barham*, 85 Cal.App.2d 202, 211 [192 P.2d 823].)

There is no merit to appellant's contention that since the jury acquitted him on count two, which charged the violation of Penal Code, section 337a, subdivision 3 (bookmaking), the verdict finding him guilty of conspiracy to violate that code section was inconsistent and cannot be sustained. █ Normally a verdict of acquittal of one of several counts is not deemed an acquittal of any other count. (Pen. Code, § 954.) █ The conspiracy count is an independent accusation (Pen. Code, §§ 182, 184; *People* v. *Martin*, 114 Cal.App. 392, 396 [300 P. 130]), based upon the criminality attaching to an unlawful agreement followed by the performance of some act in pursuance of the joint design. (*People* v. *George*, 74 Cal.App. 440, 450 et seq. [241 P. 97].) It is only when the substantive offense charged is alleged to be the only overt act in furtherance of the conspiracy that an acquittal of the substantive offense operates as an acquittal of the conspiracy count based solely thereon. █ Thus, where the conspiracy count alleged as the only overt acts the specifically described crimes set forth in the other counts, and defendant was found not guilty of any of these specific crimes, there could be no conviction of the alleged conspiracy because no overt acts had been proved. (*Oliver* v. *Superior Court*, 92 Cal.App. 94, 96-97 [267 P. 764]; accord *In re Johnston*, 3 Cal.2d 32, 35-36 [43 P.2d 541].) █ But where there are overt acts alleged in the conspiracy count in addition to those constituting the substantive offense, there may be a conviction of conspiracy and an acquittal of the substantive offense. Such a conviction and acquittal have been held not to be inconsistent. (*People* v. *Guerrero*, 22 Cal.2d 183, 188 [137 P.2d 21]; *People* v. *Darnell*, 97 Cal.App.2d 630, 635-636 [218 P.2d 172]; *People* v. *McNamara*, 103 Cal.App.2d 729, 736-738 [230 P.2d 411].)

Here the first count of the information charged appellant and Schaefer with conspiracy "to engage in pool selling and bookmaking, and to receive, hold and forward bets and wagers upon the result and purported result of contests of skill, speed and power of endurance of men and beasts, to wit,

horse races." Five overt acts in pursuance of the conspiracy are then alleged: (1) That Schaefer accepted a bet from Jacobsen on October 23, 1952; (2) that Schaefer met Jacobsen on October 24, 1952, by prearranged appointment; (3) that on said October 24, Schaefer accepted four bets from Jacobsen, totaling $20; (4) that Schaefer on said October 24 took the $20 given him by Jacobsen, together with a betting marker, to a certain bar in Long Beach, and (5) "That pursuant to said conspiracy and to accomplish its objects and purposes, the said defendant, Leon Wayne Schaefer, on or about the 24th day of October, 1952, in the County of Los Angeles, handed said bet and betting marker to the said defendant, William Clyde Robinson, who accepted said money and betting marker and had a conversation with the said Leon Wayne Schaefer." Count two of the information charged as "a different offense of the same class of crimes and offenses as the charge set forth in Count I," that Robinson and Schaefer violated subdivision 3 of section 337a of the Penal Code in that on October 24, 1952, they did ". . . receive, hold and forward, and purport and pretend to receive, hold and forward, certain moneys, lawful money of the United States, and the equivalent and memorandum thereof in writing, staked, pledged, bet and wagered . . ." upon the outcome of a horse race.

 Appellant argues the inconsistency of the two verdicts on this basis: Count one, the conspiracy count, charged only one overt act against him, the fifth, relating to his alleged taking of money and a betting marker from Schaefer; count two, the bookmaking count, likewise charged him with taking "certain moneys . . . and memorandum thereof in writing . . . pledged, bet and wagered" upon the result of a horse race; the jury having found him not guilty on count two of taking money or a memorandum of bets upon horse races, such acquittal operated to acquit him of the only overt act charged against him in the conspiracy count; and therefore the two verdicts are in irreconcilable conflict. This argument is untenable. The undisputed evidence of the four overt acts committed by Schaefer would be sufficient to sustain the conspiracy conviction against appellant, once the latter's alleged connection with the conspiracy was shown. The overt acts need not be in themselves criminal in nature so long as they are done in pursuance of the conspiracy. (*People* v. *George, supra,* 74 Cal.App. 440, 451, 458; *People* v. *Stevens,* 78 Cal.App. 395, 405 [248 P. 696]; *People* v.

*Gilbert,* 26 Cal.App.2d 1, 23 [78 P.2d 770]; *People* v. *Gordon,* 71 Cal.App.2d 606, 628 [163 P.2d 110]; *People* v. *Ragone,* 84 Cal.App.2d 476, 480 [191 P.2d 126].) ▮ Nor is it necessary that the purpose of the conspiracy be fully accomplished (*People* v. *Klinkenberg,* 90 Cal.App.2d 608, 635 [204 P.2d 47, 613]; *People* v. *Darnell, supra,* 97 Cal.App.2d 630, 635-636) or that each conspirator perform some overt act. It is sufficient if one conspirator commits an overt act in carrying out the purpose of the conspiracy, for all the members thereof ''are bound by all acts of all members done in furtherance of the agreed plot.'' (*People* v. *Sica, supra,* 112 Cal.App.2d 574, 581; see, also, *People* v. *Shurtleff,* 113 Cal.App. 739, 741-742 [299 P. 92]; *People* v. *Pierce,* 110 Cal.App.2d 598, 610 [243 P.2d 585]; *People* v. *Shaw,* 115 Cal.App.2d 597, 601 [252 P.2d 670].) ▮ In view of the evidence that Schaefer committed the first four alleged overt acts pursuant to the conspiracy, which overt acts were additional to the acts alleged against appellant in count two, it cannot be said that the verdict of guilty on count one is inconsistent with the verdict of not guilty on count two. (Pen. Code, § 954; *People* v. *Gilbert, supra,* 26 Cal.App.2d 1, 22-23; *People* v. *Yant, supra,* 26 Cal.App.2d 725, 731-732; *People* v. *McNamara, supra,* 103 Cal.App.2d 729, 737-738; *People* v. *Shaw, supra,* 115 Cal.App.2d 597, 602.) It therefore becomes unnecessary to determine whether the fifth alleged overt act in count one was the same act as that alleged against appellant in count two.

There finally remains appellant's contention that the trial court should have given on its own motion, and despite appellant's failure to so request, an instruction as to the necessity for corroboration of an accomplice's testimony. (*People* v. *Putnam,* 20 Cal.2d 885, 890 [129 P.2d 367]; *People* v. *Buffum,* 40 Cal.2d 709, 724 [256 P.2d 317]; *People* v. *Katcher,* 97 Cal.App.2d 209, 216 [217 P.2d 757]; *People* v. *Ramirez,* 113 Cal.App.2d 842, 856 [249 P.2d 307].) Appellant's position is not sustained by the record. As stated in Penal Code, section 1111: ''A conviction cannot be had upon the *testimony* of an accomplice unless it be corroborated. . . . An accomplice is . . . defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.'' (Emphasis added.) Here no accomplice testified. Schaefer, the alleged accomplice, died before the trial. ▮ Officer Jacobsen was not an accomplice. (8 Cal.Jur.

§ 254, p. 175; 14 Am.Jur. § 113, p. 843; *People* v. *Heusers*, 58 Cal.App. 103, 104 [207 P. 908] ; *People* v. *Spaulding*, 81 Cal.App. 615, 617 [254 P. 614] ; *People* v. *Kennedy*, 66 Cal. App.2d 522, 524 [152 P.2d 513] ; see also Anno.: 119 A.L.R. 689.) Officer Jacobsen's testimony as to the acts and declarations of the alleged coconspirator was not therefore the testimony of an accomplice, and corroboration was not required.

The primary reason for the requirement of corroboration was stated by this court in *People* v. *Wallin*, 32 Cal.2d 803, 808 [197 P.2d 734], as follows: ''The statutory requirement of corroboration is based primarily upon the fact that experience has shown that the evidence of an accomplice should be viewed with care, caution and suspicion because it comes from a tainted source and is often given in the hope or expectation of leniency or immunity. (*People* v. *Coffey*, 161 Cal. 433, 438 [119 P. 901, 39 L.R.A.N.S. 704].)'' No such reason exists here. The officer's testimony was directed to the acts and statements of Schaefer, one of the coconspirators, which acts were performed and which statements were uttered in pursuance of the conspiracy and as part of the res gestae. Such testimony was not directed to any subsequent extrajudicial admissions or confessions which would be admissible only against the coconspirator making such admissions or confessions; and this fact sufficiently distinguishes the case of *People* v. *Crain*, 102 Cal. App.2d 566, 581 [228 P.2d 307], upon which appellant relies. Moreover, the court did give appellant's instructions properly reciting the elements of the crime of conspiracy and the need for evidence independent of the acts and declarations of one of the conspirators in order for criminal responsibility to attach to the other conspirator. In these circumstances, the instructions on the conspiracy count were properly adapted to the evidence in the case and are not open to appellant's objections.

The judgment and the order denying the motion for a new trial are affirmed.

Shenk, Acting C. J., Edmonds, J., Traynor, J., and Bray, J. pro tem.,* concurred.

CARTER, J.—I dissent.

There is insufficient evidence to support the conviction. There is no evidence to establish that appellant Robinson

*Assigned by Chairman of Judicial Council.

agreed or planned with Schaefer to violate the bookmaking laws (Pen. Code, § 337a) except the inference that might arise from evidence that Schaefer handed the money he had received from the officer and a betting paper to Robinson. The jury, however, found that Robinson did not violate the bookmaking law, that is, he did not accept bets from Schaefer which the latter had received from the officer. Appellant was found not guilty of bookmaking. It is fundamental in conspiracy that the "Conspirators must have entered into a corrupt agreement to accomplish a common unlawful design. The agreement may have been positively entered into or it may be the result of a tacit, mutual understanding. It is not necessary that the parties should meet together and enter into an explicit or formal, or elaborate and detailed, written agreement to commit the crime. Nor is it necessary that the criminal enterprise in its inception contemplate a particular crime as against a particular person or as between particular persons. It is only necessary that each conspirator adopt a common design with the knowledge and consent of the others. And the agreement may result from the actions of the defendants in carrying out a common purpose to achieve an unlawful end." (11 Cal.Jur.2d, Conspiracy, § 13.)

In the instant case the only connection of appellant with the betting was his alleged acceptance of bets from Schaefer. Schaefer accepted bets from the officer. He then went to the café where appellant worked and talked to appellant. Thus far there is no basis for an inference of an agreement. There is evidence that Schaefer then handed the money received from the officer together with a bet notation to appellant and the latter accepted them. Assuming from that that we may infer appellant and Schaefer had a prior agreement or made one at that time for appellant to accept bets from Schaefer and hence one of the elements of a conspiracy, *such actions* on appellant's part, if they occurred, would constitute a violation of section 337a of the Penal Code—the acceptance of bets on a horse race. But the jury found appellant did not accept bets, did not violate section 337a. Thus he did not accept the money or a betting record from Schaefer. Any inference of an agreement is therefore negated.

The majority opinion purports to escape the effect of the jury finding appellant not guilty of violating section 337a, by holding that there were some overt acts which did not involve appellant's asserted activities in the café. That is beside the point. Assuming that there was evidence of overt

acts, it was still necessary to establish an agreement, and the acquittal of appellant of accepting bets embraced facts which eliminated him from any agreement with Schaefer.

I do not believe there was a lack of corroboration. Officer Jacobsen, not the accomplice Schaefer, was testifying. He testified to the actions and statements of Schaefer *while the conspiracy—the crime—was being committed,* not as to statements made by him later after the crime was complete. Hence it is the same as any observer who sees the crime committed and testifies about it. His observation may include statements as well as actions of the criminal where both are relevant, and in a conspiracy case, conversations are relevant parts of the offense. Hence it is not a case of an accomplice's testimony or testimony of extrajudicial admissions by the accomplice which were not a part of the crime.

Because there was no proof connecting defendant with a conspiracy, I would reverse the judgment.

Schauer, J., concurred.