[Crim. No. 3237. Third Dist. May 15, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. O. E. SAUG-
STAD et al., Defendants and Appellants.

538

Jack Miller, Daniel J. Higgins, William H. Lally and James J. Igoe for Defendants and Appellants.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and John Foran, Deputy Attorney General, for Plaintiff and Respondent.

SCHOTTKY, J.—O. E. Saugstad, James Quirk and William Kimball were tried by a jury on six counts, each charging a conspiracy to file false reports with the Department of Motor Vehicles and two counts of conspiracy to obtain money by false pretenses. All were found guilty of the six counts charging a violation of section 182, subdivision 1, of the Penal Code, in that they conspired to violate section 20 of the Vehicle Code by making a report of sale of a new vehicle although it was a used vehicle. Only Kimball was found guilty of the conspiracy charges relating to obtaining money by false pretenses. Probation was denied. Each was sentenced to the county jail, and in addition Saugstad and Quirk were ordered to pay a fine on each of the conspiracy charges relating to the filing of false reports. The conspiracy charges

relating to false pretenses against Kimball were dismissed. This appeal is from the judgments of the court and from the orders of the court denying appellants' motions for a new trial.

O. E. Saugstad was the president of the O. E. Saugstad Company, a Ford dealer in Roseville. Kimball was the general manager and Quirk a deskman.

It was a practice of the company to assign stock numbers and prepare stock cards for each new car obtained. When a customer selected a new car, the salesman would obtain the proper stock card, and when the order was complete the stock card and the order would be pinned together. The salesman was essentially an order taker. The transaction was then handled by a closer. If the closer were successful, the contract was prepared, the car was delivered to the customer, and the stock card and the accompanying papers were sent to the office for processing. In many instances the car which had been delivered to a customer would be returned, or in the parlance of the trade "rolled back." In such cases the cars were cleaned up and replaced in the new car stock. The stock cards were returned to the new card file without any notification of the fact that the car had been delivered. This procedure was authorized by Kimball.

When a new car is sold sets of forms provided by the Department of Motor Vehicles must be completed. The forms consist of a paper license plate and an original, duplicate and triplicate form of the "DEALER'S REPORT OF SALE AND APPLICATION FOR REGISTRATION OF NEW VEHICLE." The original form, which is an application for registration, is to be completed by the dealer and purchaser at the time of sale but not later than the next business day. (Cal. Admin. Code, tit. 13, § 460.) The report of sale is to be forwarded to the department within 10 days of the date of sale. When through error a report of sale must be voided, all copies must be marked void and (except the copy retained for the dealer's record) returned to the department with a written explanation and the dealer's certificate that the vehicle covered by the report did not leave the possession of the dealer and was at no time operated under the paper license identification.

The second copy, the notice of sale, is blue and is in two parts. The stub of this copy is required to be forwarded to the department not later than the next business day following the sale. The body of the form is attached to the windshield of the new vehicle which is delivered.

The third copy remains in the book supplied by the department.

Sales meetings were held every morning at which Quirk and Kimball addressed the sales force. Kimball gave Saugstad a daily report on the conduct of the business.

Kimball did not order the original report of sale sent to the department on the sale of the cars which were rolled back. He testified that he knew that if the original were sent in the car could not be resold as a new car.

Quirk, Kimball and Saugstad were familiar with the fact that cars were being rolled back. Quirk and Kimball received commissions on each car sold.

In many cases in the operation of the Saugstad Company cars delivered were returned for various reasons after having been operated for varying periods of time and for varying mileage. In each case the application for the registration of a new vehicle had never been forwarded to the Department of Motor Vehicles (although the notice of sale had been forwarded). Upon the return of the car the stock card for the car was returned to the new car inventory without any notation that the previous transaction had been cancelled, the papers evidencing the transaction were cancelled, and the car itself returned to the new car lot. At the same time the previously completed but not forwarded application for the registration of a new vehicle was voided.

The evidence relating to the charges of conspiracy to violate section 20 of the Vehicle Code was similar as to each count. For that reason the evidence will be set forth only as to one of those counts because it suffices to illustrate the evidence as to all.

On June 29, 1959, Pablo Carillo purchased a 1959 Ford Fairlane, serial number C9RT169017, from the O. E. Saugstad Company. Carillo took delivery of the automobile and drove it between 600 and 700 miles. He was subsequently called in by somebody from the Saugstad Company and told that he could not keep the car because he was not a citizen of the United States. Carillo then returned the car to the Saugstad Company. The triplicate copy of the "DEALER'S REPORT OF SALE AND APPLICATION FOR REGISTRATION OF NEW VEHICLE" was filled out by an employee of the Saugstad Company, stating that the vehicle was "Sold to CARILLO, PABLO VENCES." It also stated with respect to the vehicle: "Date first Sold 6-29-59" and "Date first operated 6-29-59." The conditional sales contract between the O. E. Saugstad Company and Pablo

Carillo was dated "6/29/59." The duplicate of the dealer's report of sale, bearing serial number 627063, dated "6/29/59," was filled out and forwarded to the Department of Motor Vehicles. Stamped on this was the word "VOID."

On July 12, 1959, Edward Krumenacher purchased the same 1959 Ford Fairlane, serial number C9RT169017, from the O. E. Saugstad Company, paid the consideration therefor and took delivery. At the time he purchased the automobile the mileage registered on the speedometer was approximately 14 miles. The conditional sales contract between the O. E. Saugstad Company and Edward Krumenacher was dated July 12, 1959. This contract was accepted on behalf of the Saugstad Company by the appellant Quirk. The stub of the duplicate dealer's report of sale, serial number 659143, was filled out with the date sold as "7/12/59" and forwarded to the Department of Motor Vehicles. The original of the "Dealer's Report of Sale and Application for Registration of New Vehicle" was filled out, reporting the vehicle sold to "Ed B. Krumenacher," and stating with respect to the vehicle: "Date first Sold 7-12-59" and "Date first operated 7-12-59." This document stated the dealer's name as "O. E. Saugstad Co." and opposite the dealer's name as authorized agent was the signature of appellant Quirk.

Appellants' first contention is that the court committed prejudicial error in instructing the jury that motive was not an essential element of the crime of conspiracy. The instruction complained of was as follows: "Proof of a motive for an alleged crime is permissible and often is valuable, but never is essential. If, after a consideration and comparison of all the evidence, you feel an abiding conviction to a moral certainty that the defendant committed the (any) crime of which he is accused, the motive for its commission becomes unimportant. Evidence of motive is sometimes of assistance in removing doubt and completing proof which otherwise might be unsatisfactory. Motive may be shown by positive evidence or by facts surrounding the act if they support a reasonable inference. When thus proved, motive becomes a circumstance, but nothing more than a circumstance, to be considered by you. The absence of motive is equally a circumstance to be reckoned with, but on the side of innocence, tending to support the presumption of innocence, and to be given such weight as you deem proper."

Appellants argue that a corrupt motive and a joint evil intent are necessary to constitute the crime of conspiracy and

rely heavily upon a statement in *People* v. *Eiseman*, 78 Cal. App. 223 [248 P. 716], at page 247, "that a corrupt motive was an essential element of the crime of conspiracy." The quoted phrase is a loose statement of the law.　　We believe that the rule is correctly stated in 1 Wharton, Criminal Law and Procedure (Anderson), section 85, as follows: "Analytically a dual mental state is present in the case of conspiracy. There is both (1) the intent or agreement of the parties to act together, and (2) the intent to commit an unlawful act or to commit a lawful act by unlawful means, or to do an act jointly which the law makes illegal when done by two or more persons."

In his work on the General Principles of Criminal Law (2d ed.), Professor Hall states at page 92: "In some cases of conspiracy where knowledge of illegality is part of the relevant *mens rea*, the language of the decisions is also in terms of 'corrupt motive,' but it is again clear that this is often the evidentiary basis upon which the material knowledge of the law is determined."

The instruction complained of must be read together with the other instructions given, and the jury was adequately instructed on the subject of intent in the following particulars: the jury was instructed that in every crime of the type charged in each count of the indictment there must exist a union or joint operation of act and intent; the jury was instructed with respect to the conspiracy counts of which the appellants were convicted that it must have been shown beyond a reasonable doubt and to a moral certainty that they wrongfully and intentionally conspired to make false statements or conceal material facts in documents filed with the Department of Motor Vehicles and that it must have been shown that the appellants performed or caused to be performed certain overt acts toward the accomplishment of the objects of the conspiracy; the jury was instructed that common design is the essence of the conspiracy; and the jury was instructed as to the definition of section 20 of the Vehicle Code and all other words defined by statute that were pertinent. Such instructions adequately informed the jury of the law applicable to the case. (*People* v. *Bucchierre*, 57 Cal.App. 2d 153 [134 P.2d 505].)

It is significant that none of the appellants made any request for an instruction that a corrupt motive and joint evil intent are necessary to constitute the crime of conspiracy.

Appellants' next contention is that the court committed

prejudicial error in instructing the jury as to the difference in meaning between "vehicle" and "automobile." The instruction complained of was as follows:

"I instruct you that in Counts one, three, five, six, seven and eight of the indictment the terms 'new vehicle' and 'used vehicle' are used, whereas in counts two and four of said indictment the words 'new automobile' and 'used automobile' are used.

"You are instructed that the terms 'new vehicle' and 'used vehicle' are defined by law, whereas the words new automobile and used automobile are not. You are therefore instructed to construe the words new automobile and used automobile in their usual acceptance in common language."

The term "automobile" was used only in counts two and four which charged conspiracy to obtain property by false pretenses. The appellants Saugstad and Quirk were acquitted on these counts and the indictments on counts two and four were dismissed as to the appellant Kimball. Since the term "vehicle" was only used in counts one, three, five, six, seven and eight of the pleadings, and since the court at the request of appellants instructed the jury as to the meaning of the terms "new" and "used" vehicle as set forth in the Vehicle Code in compliance with their request, and since there was a dismissal or acquittal as to those counts in which the term "automobile" was referred to, we are unable to understand how appellants could have been prejudiced by the instruction given, which appears to have been in accordance with appellants' theory of the case.

Appellants contend also that the court committed prejudicial error in failing to use the statutory definition of a "used vehicle" in section 665 of the Vehicle Code, which reads: "A 'used vehicle' is a vehicle that has been registered with the department, or has been registered with the appropriate agency of authority of any other state, District of Columbia, territory or possession of the United States or foreign state, province or country, *or unregistered vehicles regularly used or operated as demonstrators in the sales work of a dealer.*" (Italics ours.)

In giving the instruction on this section the court used the language "or unregistered vehicles used as demonstrators in the sales work of a dealer" instead of the above italicised part of the instruction. Appellants contend that the court's use of the words "or unregistered vehicles used as demonstrators in the sales work of a dealer" rather than "or unregistered

vehicles *regularly* used or operated as demonstrators in the sales work of a dealer'' was an instruction which was not in conformity with the language of section 665 of the Vehicle Code, and therefore resulted in prejudicial error. Appellants argue that omitting the word ''regularly'' permitted the jury to define the term ''used vehicle'' in a manner different than the statutory definition. However, there was no evidence that any of the rolled-back automobiles which were sold subsequently to different persons were ''unregistered vehicles regularly used or operated as demonstrators in the sales work of a dealer,'' and no such claim or contention was made at the trial. In fact, in the one instance in which there was testimony with respect to demonstrator cars such a theory was negated. The testimony in point was that of appellant Quirk to the effect that he suggested to the appellant Kimball that the expense of paying the $3.00 penalty for voiding reports of sales might be reduced if they were to deliver cars on dealer's plates. Quirk testified that the suggestion did not go too far. While it might have been better to have used the word ''regularly'' in the instruction, we do not believe that, under the circumstances shown by the record, its omission was prejudicial error.

Appellants contend also that ''IT WAS ERROR TO PERMIT THE WITNESS ESTEP TO TESTIFY TO THE LEGAL CONCLUSION AS TO WHAT WAS OR WAS NOT A 'NEW' OR 'USED' VEHICLE.'' This contention is without merit as it relates to the counts of conspiracy to obtain money or property by false pretenses and not to those counts on which appellants were convicted and which are before this court for consideration on appeal.

An examination of what transpired at the trial adequately discloses that the questions were directed toward the counts of conspiracy to obtain money or property by false pretenses and not toward the counts of false reports to the Department of Motor Vehicles. ''Q. Mr. Estep, do you still have this car we have referred to here that you purchased from O. E. Saugstad? A. I do. Q. At the time that you purchased this automobile, was this car represented to you as a new car or as a used car? A. A new car. Q. Had you known that this was a used car, would you have purchased this car? MR. MILLER: I am going to object to that, leading and suggestive, and also the words 'used' and 'new' have a different legal meaning, so fixed by the Motor Vehicle Code. Opinion of the witness on a point of law. THE COURT: Overruled. You may answer that. THE WITNESS: It was represented as a new car. MR.

WYLIE: Q. Did you buy it with the understanding that it was a new car? A. That I did. Q. Would you have purchased the car had you known it to been a used car? A. I would not.''

It is quite obvious from these questions and answers that that matter being inquired into related to counts two and four of the indictment which charged appellants with conspiracy to obtain money or property by false pretenses from the witness Estep by selling him a used automobile and representing it as a new one. The witness recited that the car was represented to him as new. He stated he would not have parted with his money had he known that the car had been previously sold to and driven by another person. It was necessary for the prosecution to bring out the foregoing facts in order to establish the requisite elements of the offense of obtaining money by false pretenses. Aside from the fact that such testimony was properly admitted on the points in question, the matter is moot because the appellants are not appealing on count two.

Appellants contend also that ''THE DISTRICT ATTORNEY COMMITTED PREJUDICIAL ERROR DURING THE COURSE OF THE TRIAL AND IN HIS ARGUMENT TO THE JURY IN INDICATING THERE WAS NO WAY OF TRACING THE 'BLUE SLIPS' WHICH WERE SENT TO THE DEPARTMENT OF MOTOR VEHICLES.'' Appellants assert that the district attorney erred in asking appellant Kimball, ''You do know that these blue tags never show up on a run of the Department of Motor Vehicles, if you run a car by the engine number these blue tags will never show up?'' An objection was sustained to the question. Kimball was then asked, ''Is it not a fact that you know of your own knowledge that these blue tags are not—would not show up on a vehicle number or identification number run through the Department of Motor Vehicles?'' Kimball answered that he did not know.

In the rebuttal phase of the case the district attorney asked a witness where the blue stubs were filed. An objection was voiced. The district attorney then, in the absence of the jury, offered to prove that the blue stubs filed with the department were not filed in a manner so that the department could ascertain that a blue stub had previously been filed for the same vehicle. This evidence was rejected.

In his argument to the jury the district attorney told the jury that as long as the black and white form (the original report of sale) was held there was no way the department could ascertain whether the sale had previously been reported

to the department. An objection was interposed and a mistrial asked. The court did admonish the jury to disregard any remarks of the district attorney not supported by the evidence. We must assume that the prompt admonition of the court cured any possible prejudice (*People* v. *Schmitt*, 155 Cal.App.2d 87 [317 P.2d 673]), and that no prejudice occurred by the asking of questions to which objections were sustained. The jury was instructed that it was not to conjecture as to what the answer might have been or the reason for the objection.

Appellants contend also that the court committed prejudicial error in denying their motion for a change of venue. This contention cannot be sustained. A motion for a change of venue is addressed to the sound discretion of the trial judge. (*People* v. *Duncan*, 53 Cal.2d 803 [3 Cal.Rptr. 351, 350 P.2d 103].) The basis of appellants' motion was that the arrest of appellants received considerable newspaper publicity and that numerous prospective jurors admitted during *voir dire* that they were prejudiced against the appellants and that the original panel was exhausted without securing a jury. In this case the trial court conducted an extensive examination of each juror, as did the attorneys. The court after such examination could find that an impartial jury could be selected. The mere fact that veniremen had read articles about the arrest would not necessarily require a change of venue. (*People* v. *Carter*, 56 Cal.2d 549 [15 Cal.Rptr. 645, 364 P.2d 477].) There was no abuse of discretion in denying the motion for a change of venue.

Appellants also contend that the elisor appointed by the court had an attorney-client relationship with the district attorney and was therefore disqualified. The elisor was the coroner and public guardian. As public guardian the district attorney was his counsel. He was also on friendly terms with members of the sheriff's department and with members of the Roseville Police Department. The person selected to summon the needed jurors should be the sheriff or the coroner unless one or both are disqualified. (*People* v. *Fellows*, 122 Cal. 233 [54 P. 830].) Section 262.8 of the Code of Civil Procedure provides that the coroner is to execute process and orders when the sheriff is a party to the action. The bias of the summoning officer may be challenged. (Pen. Code, § 1064.) Bias is a question of fact. (*People* v. *Northcott*, 209 Cal. 639 [289 P. 634, 70 A.L.R. 806].) In the instant case the coroner was examined before he was

appointed. The record supports a determination he was not prejudiced. His relationship with the district attorney would not as a matter of law establish bias. (Accord, *People* v. *Mitsunaga,* 91 Cal.App. 298 [266 P. 1020]; *Estate of Wall,* 187 Cal. 50 [200 P. 929].)

Equally without merit is appellants' contention that "THE COURT COMMITTED PREJUDICIAL ERROR IN ASKING COUNSEL IN THE PRESENCE OF THE JURY WHETHER OR NOT THEY WANTED ANY INSTRUCTIONS RE-READ TO THE JURY."

After the jury had retired it returned to the court and asked that certain instructions be reread. This was done. The court asked if there were any other instructions the jury or any counsel wanted reread. The district attorney replied, "Perhaps Court Instruction Number Nine—I think you read one similar to that, . . . but I think the overt act instruction is contained in that instruction." The court said, "I thought I read that." In any event the instruction was not read thereafter. This colloquy could not have been prejudicial.

Appellants also complain the court committed prejudicial error because it permitted the district attorney to challenge a juror after he had announced that he was satisfied with the jury. There is no merit in this contention. The defense requested a recess after the district attorney announced he was satisfied with the jury and then in the absence of the jury a discussion was had on the question of a change of venue. During this discussion the defense indicated the prospective jury was acceptable. After the jury was recalled the district attorney asked permission of the court to reopen his challenge. The defense objected. After a discussion the court granted the district attorney's request. In the absence of a showing of prejudice to appellants' substantial rights a departure from the procedure prescribed by section 1088 of the Penal Code may not be availed of on appeal. (*People* v. *Hoyt,* 20 Cal.2d 306 [125 P.2d 29].)

Appellants' final and most serious contention is that the evidence is insufficient to support their convictions. The gist of appellants' contention is as follows: "Appellants all contend the evidence is insufficient in that there is an absolute failure of proof as to the overt act charged in each of the counts of which appellants were convicted. Each overt act charges that appellants on a certain date made a report of sale of a new vehicle to a certain person although the vehicle covered was a used vehicle. As hereinbefore stated the terms 'new vehicle' and 'used vehicle' are defined by statute."

The principal question that we must determine is whether appellants could properly be found guilty of conspiracy to violate section 20 of the Vehicle Code by filing false reports, where the overt act charged was filing a report of sale of a new vehicle when in fact the vehicle was a used one.

Appellants were convicted on six counts of violation of section 182, subdivision 1, of the Penal Code, conspiracy to make false reports to the Department of Motor Vehicles in violation of Vehicle Code section 20. Subdivision 1 of section 182 of the Penal Code provides as follows: "If two or more persons conspire: 1. To commit any crime."

Section 20 of the Vehicle Code provides as follows: "It is unlawful to use a false or fictitious name, or to knowingly make any false statement or knowingly conceal any material fact in any document filed with the Department of Motor Vehicles or the Department of the California Highway Patrol."

The essential element of the crime of conspiracy is the unlawful agreement between two or more persons to commit an offense prohibited by statute, accompanied by some overt act in furtherance of such agreement. (*People* v. *Sears,* 138 Cal.App.2d 773 [292 P.2d 663]; *People* v. *Goldstein,* 136 Cal.App.2d 778 [289 P.2d 581].) The unlawful agreement may be established by circumstantial evidence, and it is rare when the conspiracy can be established by direct evidence. (*People* v. *Garcia,* 187 Cal.App.2d 93 [9 Cal.Rptr. 493]; *People* v. *Reed,* 188 Cal.App.2d 395 [10 Cal.Rptr. 536]; *People* v. *Robinson,* 43 Cal.2d 132 [271 P.2d 865].)

In the instant case the evidence discloses with respect to the various counts that it was the practice of the appellants to sell new cars, prepare a report of sale, retain the report, and then if the transaction did not go through recover the vehicle, return it to the new car lot and resell the car as a new one. In each instance the first purchaser had operated the vehicle and had driven distances ranging from 200 miles to 3,000 miles. In each instance the first report of sale was not filed with the Department of Motor Vehicles as required by the Administrative Code, title 13, section 460, and the instructions appearing on the form of the Department of Motor Vehicles to be filled out in transactions involving the sale of new cars. In this connection the evidence discloses that the appellants, Saugstad, Kimball and Quirk, were familiar with the administrative regulations on the subject, and in fact had discussed the so-called "roll back" situation and the penalty provisions incurred in this practice.

In each instance the vehicle which had been originally sold and returned was again sold to a second or subsequent purchaser. The report of sale to the second or subsequent purchaser, filed with the Department of Motor Vehicles, was false in that it reported that the date the automobile was first sold, and the date it was first operated, was a date subsequent to the date it had in fact been sold to and operated by the previous purchaser.

Appellants argue that since the term "new vehicle" is defined in section 430 of the Vehicle Code as one which has never been registered and the term "used vehicle" is defined in section 665 of the Vehicle Code as one that has been registered, and since none of the vehicles had been registered at the time of sale to the ultimate purchaser, the overt act alleged in each count was not proved within the meaning of section 1104 of the Penal Code.

We do not agree with this contention. ▆▆▆ It is true that section 1104 of the Penal Code requires that in charging a conspiracy at least one overt act must be alleged and proved. However, it is well established that the overt act need not be a criminal act in itself. (*People* v. *Robinson,* 43 Cal.2d 132 [271 P.2d 865]; *People* v. *Sullivan,* 113 Cal.App.2d 510 [248 P.2d 520]; *People* v. *Shaw,* 115 Cal.App.2d 597 [252 P.2d 670]; *People* v. *Gilbert,* 26 Cal.App.2d 1 [78 P.2d 770]; *People* v. *Garcia,* 187 Cal.App.2d 93 [9 Cal.Rptr. 493]; *People* v. *Reed,* 188 Cal.App.2d 395 [10 Cal.Rptr. 536].) It is sufficient if the overt act represents any step in furtherance of the conspiracy. It may be an otherwise lawful act and it may be merely a part of the preliminary arrangement for the commission of the ultimate offense. (*People* v. *Buono,* 191 Cal.App.2d 203 [12 Cal.Rptr. 604]; *People* v. *Garcia, supra; People* v. *George,* 74 Cal.App. 440 [241 P. 97].) ▆▆▆ In each of the counts on which appellants were convicted the evidence shows that the reports filed with the Department of Motor Vehicles concealed and falsified facts as to when the vehicle had been first sold and when it had been first operated in violation of section 20 of the Vehicle Code. The making out of the report of sale to the second purchaser was the essential overt act in furtherance of the conspiracy to violate section 20. The documents as to each count were admitted into evidence as proof of the commission of the overt act charged.

▆▆▆ The purpose of the overt act is simply to show that the agreement has proceeded beyond the meeting of the minds stage to some direct or physical act, however innocent in itself,

tending toward the furtherance of the objective of the conspiracy. ██ As was said by the Supreme Court of the United States, "The function of the overt act in a conspiracy prosecution is simply to manifest 'that the conspiracy is at work,' *Carlson* v. *United States*, 187 F.2d 366, 370, and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence." (*Yates* v. *United States*, 354 U.S. 298, 334 [77 S.Ct. 1064, 1 L.Ed.2d 1356].)

██ Furthermore, we believe that while words in an indictment are, if they have a technical meaning, ordinarily construed according to such meaning, the rule does not apply where the technical word has both a limited meaning and a broad significance in the popular sense and where the whole indictment makes clear that it was used in the latter sense. (27 Am.Jur., Indictment and Information, § 62, p. 626; *Dealy* v. *United States*, 152 U.S. 539, 545-546 [14 S.Ct. 680, 38 L.Ed. 545].) ██ In the technical sense a new vehicle is one that has never been registered. In the popular sense a new vehicle is one that has not been previously sold and if previously operated then no more than necessary to prepare the vehicle for sale. Any vehicle that had been operated several hundred miles or more would not be a new automobile to a lay individual. Construing the words of the indictment broadly and not in their technical meaning, a new vehicle would be one that had not been operated. A used vehicle is one that had been operated. The appellants falsified the reports to the Department of Motor Vehicles by not stating the actual date the vehicle was first operated. They reported the sale of a used vehicle as a new one. In the sense that the vehicle had previously been sold and operated it was a used car, or a car that had been used; and in this sense the pleading was sufficient. The fact the Vehicle Code defines a new vehicle would not prevent the words of the indictment from being used in their popular sense.

While the indictment may not be a model of pleading, we believe that it is sufficient. ██ As was said by Mr. Justice Sutherland in *Hagner* v. *United States*, 285 U.S. 427 [52 S.Ct. 417, 76 L.Ed. 861], at page 431: "The rigor of old common law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. ██ The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and suffi-

ciently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' ''

 There can be no question in the instant case that the defendants were informed of the specific overt acts. They received a transcript of the grand jury proceedings. It is stated in *People* v. *Roberts,* 40 Cal.2d 483, 486 [254 P.2d 501] : ''. . . It is only required that the pleading be 'in any words sufficient to give the accused notice of the offense of which he is accused.' (Pen. Code, § 952.) Notice of the particular circumstance of the offense is given not by detailed pleading but by the transcript of the evidence. . . .''

The burden of appellants' argument upon this point is that since a new vehicle is defined by the Vehicle Code as one that has never been registered then they did not file false reports with the Department of Motor Vehicles because the cars had never been registered. It must be borne in mind that section 430 of the Vehicle Code defines a new vehicle, but this does not mean that false statements in the completion of the registration application are not actionable, even if the vehicle had never been registered. We do not believe that we would be justified in holding an indictment insufficient or a conviction thereunder invalid because of a technicality in terminology used in the indictment. To do so would, in our opinion, violate the provisions of section 960 of the Penal Code which states, ''No accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits.''

We are satisfied that the evidence is sufficient to support the judgments of conviction. Indeed, it is difficult to understand how the jury could have rendered any other verdicts. It is clear from the evidence that it was a common practice of appellants to sell new automobiles, prepare a report of sale, retain it, and then if the deal did not go through recover the vehicle, return it to the new car lot, and resell the car as a new car. In each instance the first purchaser had operated the vehicle. In each instance the first report of sale was not filed with the department as required. In each instance the report of sale filed with the department was false. It would

be incredulous to think that such activity could go on without the knowledge and connivance of the top officials, namely, appellants Saugstad, Quirk and Kimball. By permitting the practice and by permitting the filing with the Department of Motor Vehicles of reports of sales of new vehicles when in fact the vehicles had been operated, the named parties formed an agreement (implied perhaps) to file documents with the department which contained false statements. From the evidence introduced at the trial the jury could and did find such a conspiracy to have existed and could and did connect appellants with it.

The appellants were represented at the trial and upon the appeal by able and experienced counsel and received a fair and impartial trial. The jury was fully and fairly instructed and the instructions are singularly free from error. Because of the numerous contentions of error made by appellants, we have made a careful examination of the entire record and are convinced that even if appellants are correct in some of their contentions of error no miscarriage of justice has resulted.

The judgments and orders are affirmed.

Peek, P. J., and Pierce, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 11, 1962.