[Crim. No. 2168. Third Dist. Apr. 26, 1950.]

THE PEOPLE, Respondent, v. A. KATCHER, Appellant.

210

Barr & Hammond for Appellant.

Fred N. Howser, Attorney General, Doris H. Maier, Deputy Attorney General, and Fred W. Burton, District Attorney, for Respondent.

VAN DYKE, J.—Appellant was informed against in the Superior Court of Siskiyou County for the alleged commission of two felonies: (1) that of issuing a worthless check in violation of sections 476 and 476a of the Penal Code, and (2) that of obtaining property under false pretenses in violation of section 532 of that code. Upon pleas of not guilty to both counts he was tried before a jury. A verdict of not guilty was returned as to the first count and a verdict of guilty as to the second. He appeals from the judgment based upon the verdict of guilty and from the order of the court denying his motion for a new trial.

Both alleged offenses arose out of the same transaction, the purchase of cattle at an auction sale. The auction was conducted by a partnership known as ''BRAHS BROS.'' The record contains testimony as to the following happenings:

The auctioneer, before any bid was made by appellant, had told him that the sales would be for cash. When all the sales

for the day had been completed the appellant, in payment for the cattle he had bid in, gave the auctioneer a sight draft for $10,050.93. The draft was made out on a form entitled "Customer's Draft," and the body thereof read as follows:

"Dixon California
Oct. 30, 1948.

Pay to the order of Brahs Bros. $10,050.93.
Katcher Meat Co. Inc.
By A Katcher
Payable through Bank of America National Trust & Savings Association, Eighth and Broadway, Oakland, California.
Collection Item Only."

It was further shown that appellant was president of the Katcher Meat Company Inc., that his son was vice-president thereof and that the corporation had no other active officers; that the business of the corporation was the selling of meat. It was further testified to by three witnesses, including the Brahs Bros., that some trouble had been had before this auction in collecting upon like drafts given by appellant for cattle he had bid in at prior auctions, and for that reason, and before he was permitted to bid at the auction here, he was asked concerning the financial situation of his company. In response he represented that his company had been refinanced, that his draft was good, that anticipating cattle purchases he had ordered the bank through which the drafts were to be paid that it was to pay any draft issued as soon as received by it and before anything else was paid; that funds were then on deposit with the bank sufficient for that purpose and to meet the draft he might give for purchases made that day; that the money situation was all right. Upon these representations being made the auction company permitted appellant to bid for cattle, and after the sales were over accepted in payment therefor the draft above referred to.

The record further contains evidence that the above representations were false when made, were then known to be false by appellant, were made to deceive the auction firm and that the auctioneers were deceived thereby to the end that appellant procured the cattle for his corporation. The evidence was thus sufficient in law to prove the charge made in the information. But it also should be said that the evidence was in conflict upon these matters. Thus appellant testified that the

understanding between himself and the auction firm was in the nature of a credit arrangement and that all parties to the transaction so understood it; that he informed the auction company that some time would necessarily elapse during which he would have to butcher and sell the cattle before funds would be available to meet the draft. Further than this the draft itself was declared on its face to be a collection item only and there was testimony that in banking practice such an instrument was not a direction to the bank to apply any existing funds of the drawer on deposit to meet the draft but that it was required that notice to the drawer be given when the draft reached the bank, whereupon the drawer would draw a check upon his funds in the bank and the bank would then pay the draft.

As might be expected in view of the testimony above summarized, appellant does not here question the sufficiency of the evidence to sustain the verdict.

Appellant urges reversal of the verdict and judgment for the following reasons: He contends that the prosecuting attorney was guilty of prejudicial misconduct. He contends further that the court erred in failing to give requested instructions on the elements of intent and reliance, and finally he contends the court erred in refusing a requested instruction designed to inform the jury of the requirements of section 1110 of the Penal Code and in failing to give any instruction upon the subject matter of that section.

We think it unnecessary to relate in detail appellant's reasons for charging the prosecuting attorney with misconduct. It will be sufficient to say that we have scrutinized the entire record and have concluded that no finding of prejudice could be predicated upon the matters urged by appellant. At appellant's request and when these things happened, the court fully admonished the jury in respect thereto, and assuming, which we do not, that the conduct complained of was wrong, still we are completely satisfied that any possible detriment was removed by the specific admonition of the court.

Appellant requested certain instructions upon the subject of intent to defraud and reliance by Brahs Bros. upon the representations made. While the instructions were refused the record shows that other instructions covering the same subjects were given. Thus the court told the jury an intent to defraud was an intent to deceive any person for the purpose of gaining some material advantage over him or to induce him to part with property or to alter his position to his injury

or risk and to accomplish that purpose by some false statement or other act fitted to deceive. That there must be a union or joint operation of act and intent in every criminal offense, and that to constitute the crime of which appellant was found guilty there must have existed in his mind a specific intent to defraud, without which he could not be convicted. That to convict appellant there must be proof of fraudulent representation of an existing fact by one knowing it to be untrue and such as was fitted to induce the person to whom it was made to part with something of value. That before there could be conviction the jury must find the defendant had intended to defraud the one against whom the crime was perpetrated; that he must have actually defrauded that person; that he must have used a representation or false pretense for that purpose; that the pretense must have been a material element in inducing that person to part with his property, and that the false pretense must have so induced the property owner. Without dealing with the instructions further it is sufficient to say that the foregoing, together with other general instructions, were sufficient to inform the jury of the matters covered by the requested instructions, and that appellant's contentions in this regard cannot be upheld.

A much more serious contention is that wherein appellant claims that the failure of the trial court to inform the jury of the subject matter of section 1110 of the Penal Code constituted reversible error. That section provides:

"Upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense, obtained the signature of any person to a written instrument, or having obtained from any person any labor, money, or property, whether real or personal, or valuable thing, the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof is in writing, subscribed by or in the handwriting of the defendant, or unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating circumstances . . .."

Stripping this code section down to that part which applies to this case it may be stated as follows:

Unless the statement of a pretense is accompanied by the use of a false token or writing then the defendant cannot be convicted except by the production of a writing subscribed by him and constituting the pretense or some note or memoran-

dum thereof or by the testimony of two witnesses or of one witness and corroborating circumstances. The false pretense here involved constituted the statements hereinbefore related and made by the appellant to induce the sale to him. The draft did not constitute an accompanying false token or writing.

The draft was exactly what it purported to be, was in the same form as had been used before in like purchases from the same parties and contained nothing false within itself. (*People* v. *Carter,* 131 Cal.App. 177 [21 P.2d 129]; *People* v. *Gibbs,* 98 Cal. 661 [33 P. 630]; *People* v. *Beilfuss,* 59 Cal. App.2d 83 [138 P.2d 332].) In the last case, concerning the meaning of the words "false token or writing" found in the code section, the court stated:

"The cases contain no clear definitions of these terms, but to bring an object within either, there must, of necessity, be something false about it. A writing which is genuine and contains no false statements of fact cannot be a 'false token or writing.' "

The draft here contains no false statement of fact and indeed constitutes a binding obligation upon the drawer upon which recovery could be had in an appropriate action. See, also, *People* v. *Wasservogle,* 77 Cal. 173 [19 P. 270]. "The word 'writing,' as used in such a statute, means some instrument, or at least a letter, or something in writing, purporting to be the act of another, . . .. The term 'false writing' will not be construed to mean an unwarranted or false use of a genuine writing." (35 C.J.S. 643.)

To the proper instruction of the jury, therefore, it was necessary that they be instructed concerning the requirements of the code section which must be met before they could bring in a verdict of guilty. The code section here involved is found among those wherein the Legislature designates proof required in respect of certain crimes. After declaring that the rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided in the Penal Code, the code proceeds to state certain exceptions. Thus by section 1103 conviction for treason is forbidden unless upon the testimony of two witnesses to the same overt act or upon confession in open court. Next it is declared that perjury must be proved by the testimony of two witnesses or of one witness and corroborating circumstances. Similar provisions are made concerning the proof of conspiracy, of abortion and seduction of a minor, and generally as to the testimony of accomplices. With respect to the latter provision as to the question of

whether or not the trial court was required to give such an instruction on its own motion where the same had not been requested, the Supreme Court, in the case of *People* v. *Warren,* 16 Cal.2d 103 [104 P.2d 1024], stated:

"The general rules prescribing the duty of the trial court in the giving of instructions in criminal cases have been stated as follows: 'It is the duty of a court in criminal cases to give, of its own motion, instructions on the general principles of law pertinent to such cases, where they are not proposed or presented in writing by the parties themselves. But it is not its duty to give instructions upon specific points developed through the evidence introduced at the trial, unless such instructions are requested by the party desiring them. When the court fully and fairly charges the jury upon the law appertaining to the facts of the case, its failure to instruct on any particular matter deemed essential is not error in the absence of a request for such an instruction.' (8 Cal.Jur. 309, and cases cited.) All of these general principles should be considered in determining whether the trial court has performed its duty in any particular case.

"It may be conceded that the necessity for accomplice instructions is 'developed through the evidence introduced at the trial,' but can it be said that the court 'fully and fairly charges the jury upon the law appertaining to the facts of the case,' when the evidence strongly suggests that the witness, giving the only testimony tending to implicate the accused, is an accomplice and the trial court fails to instruct the jury on the law relating to the insufficiency of the uncorroborated testimony of an accomplice? We think not. Such instructions deal with the vital question of the sufficiency of the evidence to sustain the conviction under the salutary rule laid down in section 1111 of the Penal Code. We therefore believe that it was prejudicial error for the trial court to fail to give such instructions in the present case even though such instructions were not specifically requested by appellant Warren."

The court further stated:

". . . we deem it appropriate to state that we are of the opinion that whenever the testimony given upon the trial is sufficient to warrant the conclusion upon the part of the jury that a witness implicating a defendant was an accomplice, it is the duty of the trial court to instruct the jury upon the law as set forth in section 1111 of the Penal Code; that the failure

of the trial court to so instruct the jury under such circumstances, with or without a specific request for such instructions, constitutes error; but that in the event of such failure in any case, the entire record must be considered in determining whether such error constituted prejudicial error requiring a reversal of the judgment of conviction.''

In *People* v. *Curran*, 24 Cal.App.2d 673, 676 [75 P.2d 1090], wherein the trial court had failed to instruct the jury that the defendant could not be convicted of the offense of obtaining property by false pretenses unless the pretenses be proven by the testimony of two witnesses or by corroborating circumstances, the court said:

''The failure to so instruct the jury constitutes reversible error. Although it is not the duty of the court to give instructions to the jury upon specific points developed by the evidence unless such instructions are requested, it is nevertheless the duty of the court in criminal actions to give to the jury instructions on the general principles of law pertaining to the case on trial. (*People* v. *Scofield*, 203 Cal. 703 [265 P. 914].) In *People* v. *Heddens*, 12 Cal.App.2d 245 [55 P.2d 230], the trial court failed to instruct the jury that the testimony of an accomplice must be corroborated in order to sustain a conviction, as required by section 1111 of the Penal Code. The defendant did not ask for instructions on the subject but the judgment of conviction was reversed on account of the failure of the court to give the proper instruction on its own motion. The present case presents a parallel situation. In *People* v. *Carter*, 131 Cal.App. 177 [21 P.2d 129], a judgment of conviction was reversed for failure of the trial court to instruct the jury concerning the requirements of section 1110 of the Penal Code. The court referred to the legal principle involved as a 'thoroughly seasoned rule' which 'should not lightly be cast aside' and held that the provisions of section 4½ of article VI of the Constitution did not justify an affirmance of the judgment.''

It must be concluded from the foregoing that in this case it was the duty of the trial court to give an instruction embodying the principle of law pertinent to this case, as stated in Penal Code, section 1110. It was its duty to do this without request therefor, and its failure to do so constituted error.

Counsel for appellant at least attempted to request such an instruction. It presented to the court a written request that the following instruction be given:

''Because of the fact that it is an easy thing and a human

thing for a person who has suffered a loss in a business transaction to claim that the loss was occasioned by a false pretense, the law has been very concerned with the protection of a person accused of obtaining money or property under false pretenses. And, before you can find the defendant guilty of obtaining property by false pretenses, you must find beyond a reasonable doubt and to a moral certainty one of two things: (a) that there was a written memorandum of the false pretense. (b) That the pretense is proved by the testimony of two witnesses, or one witness in *cooperating* circumstances.''

While the first sentence of this proposed instruction might well have been stricken as being argumentative, the concluding portion was apt and applicable and clearly sufficient to inform the trial court that an instruction in line with the code section was desired. Respondent points out that the requested instruction is ''garbled,'' referring to the last clause thereof, ''or one witness in cooperating circumstances,'' but from the whole context it must have been known what was meant, and the unfortunate typographical error was no justification for a refusal to give the instruction with the necessary correction, and certainly no justification for failure to give any instruction at all upon the subject.

We turn now to the question of whether or not the failure to give an instruction along the lines we have discussed was prejudicial error necessitating reversal and beyond the saving grace of article VI, section 4½, of the Constitution. In *People* v. *Carter, supra,* which was a case similar to this one, the court said:

''Finally, respondent suggests that an application of the provisions of section 4½ of article VI of the Constitution indicates that the judgment herein should be affirmed. By one of the terms of section 1110 of the Penal Code it is provided that a defendant cannot be convicted, 'unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating circumstances; . . .' From a consideration of such provision, together with the evidence adduced on the trial, it will become apparent that to give effect to the constitutional provision invoked by the respondent would require either that this court ignore at least that part of the statute to which attention has been directed, or that it invade the province of the jury in its legally exclusive right to pass upon the weight of the evidence and the credibility of the several witnesses.''

We think the above statement aptly describes the situation in the case at bar; that in view of the record here an appellate court would not be justified in holding that reversible error was not committed in the trial of this case. In this connection it should be remembered that the jury found appellant not guilty of the crime of issuing a fictitious check or draft in this same transaction, indicating that upon the whole record this case could not be considered one where the guilt of the defendant was so clearly shown that to reverse the judgment would be in itself a miscarriage of justice. On the contrary, for this court to say that had the jury been properly instructed it would in all probability have convicted the appellant in any case, would be to indulge in sheer speculation.

For the reasons given the judgment and order denying a new trial are reversed and the cause remanded for a new trial.

Adams, P. J., and Peek, J., concurred.