[Crim. No. 453.   Fifth Dist.   Aug. 9, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ARTHUR H. HESBON, Defendant and Appellant.

George T. Davis and Lynn S. Carman for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

GARGANO, J.—Appellant was convicted, after jury trial, of grand theft in violation of section 476a of the Penal Code. Appellant's application for probation was denied, and he was sentenced to state prison for the term prescribed by law. He appeals from the judgment of conviction.

Appellant was employed by Colusa County as a collector to collect delinquent hospital accounts. These accounts were handled as follows. The hospital's business office made out cards of the patients as they entered the hospital. Later the delinquent account cards were separated from the current account cards and transferred to the collector's office. The business office kept a record of the total amount of cards

transferred to the collector's office, but it did not keep a separate record of the patients' names on the transferred cards. Thus, the transferred delinquent cards were the only permanent records of the accounts due. Subsequently, when the collectors collected a payment they would give the debtor a numbered receipt from a receipt book maintained for that purpose. They would then take the money and a copy of the receipt to the hospital business office. The cashier would take the money, sign the receipt copy and record the payment. The money would be sent to the hospital's auditor and the collection department would transfer the delinquent accounts back to the business office.

In July 1965 appellant telephoned Lloyd A. Westcamp about Westcamp's delinquent hospital account; Westcamp was hospitalized in 1953 and his delinquent account amounted to $475. Westcamp went to appellant's office in response to the telephone call where he saw what appeared to be his account card on appellant's desk during the interview. He told appellant that he was going to sell a pleasure boat and would take care of the hospital bill with the proceeds of the sale. Appellant replied he was interested in buying a boat himself. Thereafter appellant visited Westcamp's place of business on several occasions where they discussed the boat sale and finally agreed upon a price of $775.

In August 1965 appellant presented Westcamp with a signed collector's receipt. The receipt was numbered 5649 and contained Westcamp's name with the notation "paid in full." Appellant told Westcamp that his bill was paid, but Westcamp objected and said that he would rather pay the hospital by check. Appellant replied that he was bonded and consequently there was no need to make out two checks. Persuaded, Westcamp delivered the boat to appellant who paid Westcamp the $300 difference between the amount of the hospital bill and the boat. However, when the hospital administrator conducted a search of the hospital records he was unable to locate either a receipt book containing a copy of Receipt No. 5649 or Mr. Westcamp's delinquent account card.

At the trial appellant testified that he purchased Westcamp's boat for the purchase price of $775. He admitted that he gave Westcamp a hospital receipt for the sum of $475 in partial payment for the boat and stated that he paid this amount, in cash, to the hospital cashier, who initialed it in the usual manner. However, the cash receipts in the business office

did not show a payment of $475 at any time during the period appellant alleged he paid the cashier.

Appellant presents four main contentions for reversal: the judgment is totally void; appellant's right to due process and to a fair trial was violated by the needless allegation of his prior felony conviction in the grand jury indictment; the jury's verdict was void for uncertainty; and the court failed to instruct on all issues raised by the indictment and the evidence.

## I

Appellant was indicted by the Colusa County Grand Jury on two counts of grand theft, one count of petty theft with a prior felony conviction and attempted grand theft. Counts I and II were concerned with the hospital account of one Krug. Count III charged appellant with attempted grand theft in connection with the hospital account of one Huckaby. Count IV charged appellant with grand theft in connection with the Westcamp affair.

Later counts I and II were dismissed by the district attorney, and thereafter count III was referred to by the parties as the "first charge of the indictment," and count IV was referred to as the "second charge of the indictment." Moreover, at the beginning of the trial, when the court clerk read the amended indictment to the jury, he also referred to count III (the Huckaby offense) as the "first charge" and to count IV (the Westcamp offense) as the "second charge." And the same numerical designation was used in the verdict form which was handed to the jury.

Subsequently the jury found defendant guilty of grand theft as charged in the "second charge of the indictment;" the jurors were deadlocked on the "first charge" so the trial judge declared a mistrial as to count III. The trial judge then denied appellant's application for probation and sentenced appellant to state prison for the term prescribed by law. However, when the trial judge pronounced sentence he did not mention the nature of the felony for which appellant was being sentenced nor the count under which appellant was convicted by the jury.[1] To complicate matters further, the abstract of judgment (which the trial judge signed) states

[1]The trial judge merely stated: "It is the judgment and sentence of this court that this defendant be sentenced to State Prison for the term prescribed by law, the defendant is subject to further motions and is remanded to the custody of the Glenn County Sheriff for delivery to the Director of Corrections at the Guidance and Medical Facility, Vacaville; California."

that appellant was convicted of grand theft in violation of Penal Code section 476a as charged in "Count II" of the indictment.

Appellant admits that all parties understood that the "second charge" of the amended indictment referred to the Westcamp affair as charged in count IV of the indictment. He nevertheless asserts that the judgment roll did not reflect this fact, and it was incumbent upon the trial judge to adjudicate the appellant guilty as charged in count IV as a predicate to the pronouncement of judgment under Penal Code section 1191.[2] Accordingly, appellant concludes that since the trial judge did not do so and since the omission cannot be corrected within the time prescribed by section 1191, the judgment is void.

Admittedly, the trial judge's imposition of sentence in the instant case, standing alone, was vague and equivocal. However, Penal Code section 1191 does not set forth with specificity the language which must be employed by the trial judge in imposing judgment. "Pronouncing," by court gloss, now means oral articulation (*In re Bateman,* 94 Cal.App. 639, 640-641 [271 P. 757]). Consequently, when the trial judge's statement sentencing appellant is viewed in light of the entire record, it is abundantly clear that he pronounced judgment sentencing appellant to state prison for the term prescribed by law for the crime of grand theft as charged in count IV of the amended indictment. In fact, the crime of grand theft as charged in count IV is the only crime for which appellant could have been sentenced. As we have stated, the district attorney dismissed counts I and II prior to trial and the court declared a mistrial as to count III.

The entire record may be looked to in ascertaining the offense for which an accused is sentenced, and erroneous recitals or statements by the court in pronouncing sentence

---

[2]Penal Code section 1191 reads in pertinent part as follows: "In the superior court, after a plea, finding or verdict of guilty, or after a finding or verdict against the defendant on a plea of a former conviction or acquittal, or once in jeopardy, the court must appoint a time for pronouncing judgment, which must be within 21 days after the verdict, finding or plea of guilty, during which time the court shall refer the case to the probation officer for a report if eligible to probation and pursuant to Section 1203 of this code; provided, however, that the court may extend the time not more than 10 days for the purpose of hearing or determining any motion for a new trial, or in arrest of judgment, and may further extend the time until the probation officer's report is received and until any proceedings for granting or denying probation have been disposed of."

will not vitiate the judgment when the record fully discloses the offense for which the accused was indicted, tried and convicted. " 'In such case the record furnishes a complete protection against another prosecution for the same offense.' " (*People* v. *Smith,* 151 Cal.App.2d 294, 297 [311 P.2d 149].)

Moreover, misstating the number of any count does not control over the substance. Consequently, the form of the verdict is immaterial if the intention to sentence for the crime charged is unmistakably expressed. As the court stated in *People* v. *Toney,* 192 Cal.App.2d 711, 721-722 [13 Cal.Rptr. 756] : "It should be borne in mind that the numbering of the charges of a multiple accusation is not required by statute or decisions; that that is but a convenience for identification and absence of numbering of the counts does not affect the validity of an indictment or information in any degree. [Citations.] Hence, the numbers may be disregarded whenever desirable for clarification."

And, as was said in *People* v. *Ihm,* 247 Cal.App.2d 388, 393 [55 Cal.Rptr. 599] : "When the judgment record, by reference to the indictment, information or complaint, to which reference is specifically made, sufficiently shows the offense of which a defendant has been convicted and for which he is sentenced, the reference to our description of the offense is sufficient, and the defendant is not prejudiced by inaccurate statements which relate thereto, and the judgment is not void on that account."

Appellant relies on *In re Robbins,* 27 Cal.App. 677 [151 P. 14], to support his contention that the judgment is void. However, the *Robbins* decision is distinguishable. In that case the defendant was sentenced by the trial judge after a court trial without specifying of what defendant was guilty. Thus, the appellate court stated: "Assuming that the judgment as originally attempted to be rendered was expressed in the form and manner as described in the petition, viz.: 'I fine him $150.00 or 150 days in jail,' then it was no judgment at all. The cause having been tried before the justice without a jury, he or his court became the arbiter of the facts, and before a penalty could be imposed obviously a judgment of guilty would have to be by him reached and announced. The 'judgment' thus imposed or rendered was without the necessary predicate to support it, conceding, for the purposes of this case, that it was sufficient in form." (27 Cal.App. at pp. 681-682.) But in the instant case defendant was found guilty of a specific crime (grand theft) by a jury, and he was

obviously sentenced by the trial judge for the commission of this crime.

Appellant also points with emphasis to the abstract of judgment which incorrectly indicates that appellant was found guilty of grand theft as charged in "Count II" of the amended indictment. However, this error is clerical, not judicial, in nature and may be corrected (*People* v. *Schultz*, 238 Cal.App.2d 804, 808 [48 Cal.Rptr. 328]).

## II

Appellant concedes that a defendant's prior felony conviction must be alleged in the information or indictment under Penal Code section 969. In fact, appellant's prior felony conviction was an essential element of the crime charged in count II, i.e., petty theft with a prior felony conviction (Pen. Code, § 667). Appellant nevertheless contends the pleading of his prior felony conviction in the indictment violated his right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and article I, section 13, of the California Constitution. However, essentially similar constitutional arguments were rejected in *People* v. *Hoerler*, 208 Cal.App.2d 402, 407-408 [25 Cal.Rptr. 209]. Moreover, the procedure for pleading prior convictions in indictments or informations was approved by the United States Supreme Court in *Spencer* v. *Texas*, 385 U.S. 554, 564 [17 L.Ed.2d 606, 614, 87 S.Ct. 648, 654]. In that case the Supreme Court stated: "It would be a wholly unjustifiable encroachment by this court upon the constitutional power of the States to promulgate their own rules of evidence to try their own state-created crimes in their own state courts, so long as their rules are not prohibited by any provision of the United States Constitution, which these rules are not." (385 U.S. 568.)

Appellant next maintains that the newspaper notoriety given to his prior felony conviction by the Sacramento Bee, a newspaper circulated in both Colusa and Glenn Counties, deprived him of a fair trial. Prior to appellant's trial the Sacramento Bee published an article mentioning appellant's prior felony conviction. Later, when 12 unbiased jurors could not be found in Colusa County, appellant moved for a change of venue. Appellant's motion was granted and the case transferred to Glenn County. Afterwards the Sacramento Bee published a second article explaining the case had been trans-

ferred to Glenn County for trial. This article also mentioned appellant's prior felony conviction.

Appellant's contention is without substantial merit. Appellant did not object to the transfer of his case from Colusa County to the neighboring Glenn County even though he presumably knew that the Sacramento Bee was also circulated in that county. Moreover, appellant did not move for a change of venue from Glenn County to some other county after the second newspaper article of which he now complains was published. And, significantly, the record does not indicate that the prospective jurors in Glenn County were prejudiced against appellant as a result of the newspaper articles. In fact, appellant's counsel did not even use all of his peremptory challenges.

■ A showing that newspaper articles may have caused some prejudice in a community is not enough to substantiate a claim of inability to obtain a fair trial. It must be shown that jurors could not be found who had not formed opinions unfavorable to the defendant as the result of the publicity and that those holding such opinions could not set aside their opinions and accord the defendant a fair and impartial trial (*People* v. *Duncan,* 53 Cal.2d 803, 812 [3 Cal.Rptr. 351, 350 P.2d 103].) ■ And since appellant did not exercise all of his peremptory challenges, we must assume he was satisfied with the jury and did not believe that they were prejudiced by the newspaper articles (*People* v. *Mata,* 131 Cal.App.2d 205, 207 [280 P.2d 175]; *People* v. *Agnew,* 77 Cal.App.2d 748, 759 [176 P.2d 724]).

### III

■ Count IV of the amended indictment inter alia states that appellant "unlawfully took the property of another, to wit, the property of Lloyd A. Westcamp and the County of Colusa, of a value exceeding $200.00." Appellant maintains that respondent's evidence did not prove that he took any money or other property belonging to both Colusa County and Lloyd A. Westcamp. Thus, appellant contends that, since the jury found him guilty as charged in the "second charge" (count IV), its verdict is void for uncertainty.

This contention is also without substantial merit. The jury found appellant guilty of grand theft in accordance with the only evidence produced against him, and the wording of the indictment was not critical to its decision. In other words, appellant admitted that he took Westcamp's boat after he told Westcamp that he had paid his delinquent hospital bill.

Manifestly, if the jury had believed appellant's testimony that he paid the hospital bill they would not have found him guilty of any crime. On the other hand, if they believed, as they apparently did, that appellant did not pay Westcamp's hospital bill, they correctly found appellant guilty of grand theft, and whether they also believed that he had stolen from both Westcamp and the county was immaterial to their verdict.

Admittedly, respondent's proof is at variance with the accusatory pleading.[3] However, the variance does not require reversal. According to the record, appellant was apprised of the charge against him and obviously was not misled in preparing his defense; appellant did not dispute any of respondent's evidence except to testify that he paid Westcamp's delinquent hospital bill. ■■ ''The test of the materiality of a variance is whether the indictment or information so fully and correctly informs the defendant of the criminal act with which he is charged that, taking into consideration the proof which is introduced against him, he is not misled in making his defense, or placed in danger of being twice put in jeopardy for the same offense.'' (*People* v. *LaMarr*, 20 Cal.2d 705, 711 [128 P.2d 345].)

IV

■■ Appellant's final contention that the trial judge erred when he failed to instruct the jury on embezzlement is patently inconsistent with appellant's contention that there was no evidence appellant stole any property from Colusa County, and it is contrary to the rule that jury instructions must be responsive to the evidence (*People* v. *McCoy*, 25 Cal.2d 177, 188 [153 P.2d 315]; *People* v. *Moody*, 216 Cal. App.2d 250, 254 [30 Cal.Rptr. 785]). Moreover, appellant initially requested and then withdrew his request for an embezzlement instruction. Under these circumstances appellant cannot be heard to complain on appeal.

Appellant asserts that the embezzlement instruction should have been given by the court *sua sponte* because the district attorney argued the embezzlement theory to the jury. ■■ However, jury instructions must be responsive to the evidence, not to closing arguments. ■■ Moreover, when the

---

[3]Appellant did not collect any money from Westcamp and hence he did not embezzle money or other property belonging to Colusa County. As we have stated, according to respondent's evidence, appellant stole Westcamp's boat under the false pretense that he had paid Westcamp's delinquent hospital bill. But in no event did he steal property belonging to both Westcamp and Colusa County.

district attorney's remarks are taken in full context, it is evident that appellant's assertion is without substance. The district attorney stated:

"Now, please bear in mind the defendant is charged by the Colusa County Grand Jury with two charges. He is not charged by that grand jury with generally rifling the till of the Colusa Memorial Hospital. He is charged with two specific instances or incidents. Listening to some of the defense evidence you would get the impression that inasmuch as the defendant didn't walk off with thousands and thousands of dollars or disassemble the Colusa Memorial Hospital cement block by cement block on some dark night that he shouldn't be convicted of the two charges lodged against him by the Colusa County Grand Jury. These two examples or these two charges exhibit what amounts to really some petty chiseling. However, because of the amounts involved, over $200.00 in each instance, it is grand theft and attempted grand theft because it is over $200.00 involved.

". . . . . . . . . . . .

"Actually, what the defendant did, he represented falsely to Lloyd Westcamp that he, Hesbon, had paid that bill; by doing so he cheated the Memorial Hospital, in effect, out of $475.00 because the Westcamp bill wasn't paid. And he cheated Westcamp, in effect, out of $475.00 because Westcamp's bill was not paid, and he, Westcamp, was still liable on it. And in addition to that Westcamp had given up a boat worth $775.00 for $300 in cash. That is the only thing that Hesbon gave him in this entire transaction except for the phony receipt.

"The final result is the hospital didn't get paid, *Westcamp gave up his boat for $300.00, and he is still liable on the $475.00 hospital bill. The only one who came out smelling like a rose was the defendant. He had a $775.00 boat for $300.00.*" (Italics added.)

The judgment is affirmed with directions to the trial court to correct the abstract of judgment to read that appellant was convicted of "Count IV" of the amended indictment instead of "Count II."

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied September 5, 1968, and appellant's petition for a hearing by the Supreme Court was denied October 3, 1968.