[Crim. No. 5362. Fourth Dist., Div. One. Sept. 18, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD L. MASON, Defendant and Appellant.

**COUNSEL**

Kenyon C. Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Mark L. Christiansen and Joseph M. Cavanagh, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WHELAN, J.**—Donald L. Mason, defendant, has appealed from a judgment imposing concurrent sentences to prison after jury verdicts finding him guilty of grand theft (count one) and issuing a check with insufficient funds with intent to defraud (count two).

Defendant gave a bad check drawn by himself in part payment of an automobile, possession and title to which were delivered to him in the transaction. He neither had nor had reason to believe he had funds to cover the check. He did not make any express statement the check was good or that there were funds to cover it.

He contends a conviction of both crimes arising out of the same transaction may not be had, arguing Penal Code section 476a is a special statute within the meaning of *People* v. *Gilbert,* 1 Cal.3d 475 [82 Cal.Rptr. 724, 462 P.2d 580]; that since the theory of theft of the automobile was a false pretense as to the worth of the check, he was subject to prosecution only under the special statute and a finding of guilty of theft based upon that false pretense may not stand in addition to the conviction based on the uttering of the check.

Essentially defendant's argument is that a conviction of theft may never be had based upon false pretenses as to the value of a worthless check uttered by the defendant.

It is not true that one could not be convicted of theft based upon a representation that a fraudulent check was good.

In *People* v. *Rose,* 42 Cal.App. 540 [183 P. 874], such a conviction was upheld based upon an explicit declaration the check was good.

*People* v. *Martin,* 208 Cal.App.2d 867 [25 Cal.Rptr. 610], and *People*

v. *Freedman,* 111 Cal.App.2d 611 [245 P.2d 45], are authority for the proposition that a conviction under section 476a and a conviction of grand theft based upon false pretenses as to a check's validity and arising out of the same transaction may stand.

In neither of those cases does the published opinion contain the specific evidence as to the representations made, except as to certain counts in *Martin* in which false financial statements were used. There is no need to question that in each case there were such representations.

We now come to the more serious question: whether the evidence was sufficient to support the conviction of grand theft.

In the case at bench there is no evidence of any oral statement made by defendant that the check was good. Section 476a does not require such representations, but provides that the crime may be committed "although no express representation is made with reference thereto."

The authorities have been divided as to whether an express representation is required in order to constitute obtaining property by false pretenses when a check is given without sufficient funds to cover. (See annotations in 35 A.L.R. 347 and 174 A.L.R. 176; and see *People* v. *Niver,* 7 Mich.App. 652 [152 N.W.2d 714].)

In a prosecution for theft in which a bad check is concerned, the representation might be with regard to other matters, such as the condition of the defendant's savings account. (*People* v. *Kemp,* 124 Cal.App.2d 683 [269 P.2d 186].)

In California it is clear that there is "implicit in the making, drawing, uttering, or delivering of a check or draft," the specific representation "that at the time of making, drawing, uttering, or delivery the maker *then* has sufficient funds in or credit with the bank for payment of that check or draft and all other checks or drafts then outstanding." (*People* v. *Poyet,* 6 Cal.3d 530, 536 [99 Cal.Rptr. 758, 492 P.2d 1150].)

*Poyet* dealt with a conviction for a violation of Penal Code section 476a, and not of theft. The same representation is implicit in a check the giving of which is the basis for a prosecution for theft by false pretenses. In such a prosecution, however, there is an added element.

The proof requisite for a conviction of theft by false pretenses is defined by Penal Code section 1110, as follows: "Upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense, obtained the signature of any person to a written instrument, or

having obtained from any person any labor, money, or property, whether real or personal, or valuable thing, the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof is in writing, subscribed by or in the handwriting of the defendant, or unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating circumstances; but this section does not apply to a prosecution for falsely representing or personating another, and, in such assumed character, marrying, or receiving any money or property." The jury must be instructed to that effect.

The theory of theft in the case at bench was that accomplished by false pretenses, concerning which the jury was instructed as to all matters except the quantum of proof required by Penal Code section 1110.

The failure in a proper case to give an instruction based upon Penal Code section 1110 is reversible error (*People* v. *Carter,* 131 Cal.App. 177 [21 P.2d 129]), even though the instruction has not been requested (*People* v. *Katcher,* 97 Cal.App.2d 209 [217 P.2d 757]; *People* v. *Curran,* 24 Cal. App.2d 673 [75 P.2d 1090]).

In the case at bench the trial judge expressed the opinion the instruction was not required when the theft was of an automobile under Penal Code section 487. From the record it appears defense counsel waived the giving of the instruction.

However, the waiver of the giving of the instruction after the evidence was in was not a waiver of the evidentiary requirements of section 1110, and the necessity for the quantum of proof called for by the section was not eliminated.

*People* v. *Donaldson,* 70 Cal. 116 [11 P. 681], has been cited by the Attorney General as authority for the proposition that the giving of an insufficient-funds check, without more, will support a conviction of theft of property given in exchange for the check.

In *Donaldson,* the court said, at pages 118-119: "It is very clear that if the court had given the first of these instructions, the jury would have been compelled to exclude from consideration all that was said or done in the transaction tending to prove the defendant's guilt, and would have been obliged to acquit him unless it had appeared that the defendant had said to Mr. Spence when he handed him the check, 'I have the money that check calls for in the Commercial and Savings Bank of San Jose.' Such a misleading instruction, utterly discarding all the evidence pertinent to the issue, was very properly refused.

"A bank check may be a false token, and would be such under the statute, if the drawer knew when he gave it, payable to a person other than himself, that he had neither funds to meet it nor credit at the bank upon which he drew it. [Citations.]

". . . . . . . . . . . . . . . . . .

"The bank check for $196.70 in writing, together with the other evidence in the cause, was sufficient under section 1110 of the Penal Code, which requires that 'upon a trial for having, with an intent to cheat and defraud another designedly by any false pretense, . . . obtained from any person any money, personal property, or valuable thing, the defendant cannot be convicted if the false pretense was expressed in langauage unaccompanied by a false token in writing,' etc."

It is clear that the check referred to in *Donaldson* was considered to be the "false token" required by section 1110 to corroborate the false representation otherwise conveyed, and that there was other evidence of things said and done tending to prove defendant's guilt.

In *Donaldson* and in *People* v. *Wasservogle,* 77 Cal. 173 [19 P. 270], where a draft was given without credit to draw against, the brief decisions do not detail the evidence. In *Wasservogle,* the court stated, at page 176: "[T]here was testimony tending to establish all of [the] four requisites, and therefore . . . the judgment cannot be reversed for want of evidence."

In the case at bench the implied representation was unaccompanied by a false token or writing, unless the check itself was a false writing.

We need not discuss whether the court in *Donaldson* was correct in saying that a check that was genuine, although given without there being funds to meet it, can be a false token within the meaning of Penal Code section 1110. Later decisions of the Court of Appeal have taken a different view. (See *People* v. *Katcher, supra,* 97 Cal.App.2d 209; *People* v. *Carter, supra,* 131 Cal.App. 177.)[1]

---

[1]"The false pretense here involved constituted the statements hereinbefore related and made by the appellant to induce the sale to him. The draft did not constitute an accompanying false token or writing. The draft was exactly what it purported to be, . . .

". . . . . . . . . . . . . . . . . .

"The draft here contains no false statement of fact and indeed constitutes a binding obligation upon the drawer upon which recovery could be had in an appropriate action. See, also, *People* v. *Wasservogle,* 77 Cal. 173 [19 P. 270]. 'The word "writing," as used in such a statute, means some instrument, or at least a letter, or something in writing, purporting to be the act of another, . . . The term "false writing" will not be construed to mean an unwarranted or false use of a genuine writing.' (35 C.J.S. 643.)" *People* v. *Katcher,* 97 Cal.App.2d 209, 214 [217 P.2d 757].)

"One of the alternative provisions expressed in section 1110 of the Penal Code as

We are satisfied, however, that if there were a representation independent of the check, the representation to be inferred from the check might furnish the corroboration required by section 1110.

Here the false pretense was not expressed in language; there was no evidence of any representation except that implied by the giving of the check. The only prosecution witness to the giving of the check was a car salesman. The only defense witness testified the salesman was told by defendant that there was much activity in his bank account, was asked to hold the check for a couple of days, and had said "Okay."

Since the representation was that to be inferred from the giving of the check, and is not to be found in the express language of the check, there must have been something in addition to the check to meet the requirements of section 1110 that the making of the pretense be corroborated.

■ We are of opinion that the check cannot be at the same time the source of the implied false representation and the false token that corroborates the making of the false representation.

■ Since the requirements of section 1110 have not been met, the conviction of grand theft must be reversed.

■ Defendant claims he was deprived of his Sixth Amendment right to trial counsel because when, on October 18, he asked to have his court-appointed attorney replaced by another court-appointed attorney the court refused to permit such action unless defendant would waive his statutory right to be tried within 60 days after the filing of the information on August 23, 1972. He seems to think the error was magnified when, because of the illness of a witness, the trial actually did not commence until

---

a necessary condition precedent to a conviction of the offense of which defendants were charged is that the false pretense in question must be accompanied by a 'false token.' On the trial of the action it appeared that in obtaining the automobile which was the property of which the complaining witness was alleged to have been defrauded, the defendants gave to such witness a promissory note, signed by each of the defendants and one other person. In such circumstances, and because the evidence showed that on one occasion preceding the date of the trial one of the defendants admitted that 'he never had any intention of paying the note,' it is urged by the respondent herein that such promissory note was a 'false token'; from which assumed fact it is argued that the defendants were not entitled to have the instruction here under consideration given to the jury. But aside from other considerations with reference thereto, it is clear that, whatever may have been the intention of the defendant who made such admission, the note itself was not false. To the contrary, it was genuine in all particulars, and from aught that appears, constituted a binding obligation upon the persons who executed it. [Citation.]" (*People* v. *Carter*, 131 Cal.App. 177, 183-184 [21 P.2d 129].)

October 26, after defendant on October 25 requested a continuance. He had made a motion for dismissal on October 24 which was denied.

Defendant's contention presupposes a defendant has a constitutional right to have a change of attorneys at any stage of a proceeding and based upon his feelings.

Defendant gave as a reason for his request for change of attorneys that he just did not feel he had any rapport with his attorney because he did not feel the attorney was as convinced of defendant's innocence as defendant was.

Such a reason would not require the court to replace the attorney on October 18, the date originally set for trial. If the court as a matter of accommodation were willing to do it upon condition that the 60-day requirement should be waived, such a condition was not unreasonable.

Defendant has not attempted to show the attorney did not handle the trial competently. Certainly the criteria of *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], for determining whether there has been a deprivation of the right to counsel have not been met.

The vacation of the conviction of grand theft obviates another contention which has to do with the sentence imposed for that conviction.

Defendant's final contention is that the abstract of judgment furnished under Penal Code section 1213 to the officer whose duty it was to execute the judgment erroneously contained a statement there had been a prior conviction of grand theft of an automobile. That abstract was certified on November 21, 1972 by the trial judge as a true and correct abstract of the judgment made and entered in the minutes of the court.

The copy of the judgment filed with the papers in the case, as provided by Penal Code section 1207, does not specifically state the fact of the prior conviction. It states merely that the sentence imposed "shall run concurrent with respect to any prior incomplete sentences." While the effect would have been the same (Pen. Code, § 669) if the copy of the judgment had not mentioned the sentence should be concurrent, it may be doubted that the quoted excerpt was intended to state the fact of a prior felony conviction. Unless it states the fact of a prior conviction, the minutes do not contain the statement required by Penal Code section 1207.

What appears in the record as the minutes of the court of November 21, 1972, in which the judgment was entered is a carbon replica of the copy of the judgment filed with the papers in the case, made upon the same form, from which the lower part containing a certification to be

signed by the judge had been cut away, and at the top of which had been added by typewriter: "Criminal minutes Dept. 21, Nov. 21, 1972."

The copy of the judgment filed with the papers in the case may be said, therefore, to be the original of that of which it was to be a copy, and that original of which it was to be a copy became such original after the fact.

In support of his contention the abstract of judgment should be ordered amended by deletion of the reference to the prior felony conviction, defendant cites *In re Mills,* 55 Cal.2d 646, 652 [12 Cal.Rptr. 483, 361 P.2d 15]. He relies also on *In re Candelario,* 3 Cal.3d 702 [91 Cal.Rptr. 497, 477 P.2d 729].

The question is whether *Candelario's* effect is to be confined to its particular factual situation, the fact being that the original abstract of judgment dated May 27, 1964, contained no reference to the admitted prior felony conviction; nor did the judgment as entered in the minutes of that date; an amended abstract was furnished dated June 31 (*sic*), 1964, which did contain such reference.

In *Candelario,* the court said, at page 705: "[T]he finding of the prior conviction was improperly added by an amendment to the judgment . . ."

Elsewhere in *Candelario,* the court said, at page 707: "It cannot be presumed in every case, therefore, that failure of the court to include the prior conviction in the judgment is inadvertent clerical error."

The Attorney General argues that if the judgment imposing sentence did not dispose of the admitted prior conviction, it would be proper to remand the case for resentencing, citing *People* v. *Taylor,* 15 Cal.App.3d 349 [93 Cal.Rptr. 257]. *Taylor* was a case in which the defendant had been convicted of two crimes and sentenced on only one. On his original appeal the reviewing court remanded for sentencing on the other conviction. From the sentence thereafter imposed defendant appealed, claiming double jeopardy. The Court of Appeal rejected the contention.

Here judgment imposing sentence was pronounced for the crime of which defendant was convicted. To recall the defendant to pronounce judgment for the same crime in a different form of words so as to increase the penalty would go counter to acceptable standards of judicial function.[2]

---

[2]We quote from "Standards Relating to Sentencing Alternatives and Procedures," approved by the American Bar Association:
"3.2 Minimum term.
"  .  .  .  .  .  .  .  .  .  .  .  .
"(c) Minimum sentences are rarely appropriate, and should in all cases be reasonably

We might doubt an inference may be drawn that a judge intended to strike allegations of prior convictions from the fact he failed to mention them in imposing sentence, any more than it might be inferred he meant to mention them in sentencing because they are mentioned in the abstract of judgment.

The critical question is whether the judge must mention them in imposing sentence, and if he must is there any substitute.

short. . . .
"(vi) Imposition of a minimum sentence should require the affirmative action of the sentencing court. The court should be authorized to impose a minimum sentence only after a finding that confinement for a minimum term is necessary in order to protect the public from further criminal conduct by the defendant;
". . . . . . . . . . . . .
"3.3 Habitual offenders.
"(a) . . . . . . . . . .
"(i) Any increased term which can be imposed because of prior criminality should be related in severity to the sentence otherwise provided for the new offense;
". . . . . . . . . . . . .
"(iii) The court should be authorized to fix a minimum term in accordance with the principles stated in section 3.2. (b) Whether to sentence a particular offender to the normal term or to a special term on grounds of habitual criminality should be a matter for the discretion of the sentencing court, and should be determined at the time of sentencing. . . .
"5.6 Imposition of sentence. In addition to reaching the conclusions required as a prerequisite to imposition of the sentence selected, when sentence is imposed the court:
". . . . . . . . . . . . .
"(ii) normally should state for the record in the presence of the defendant the reasons for selecting the particular sentence to be imposed. . . .
". . . . . . . . . . . . .
"5.7 Record. (a) As in the case of all other proceedings in open court, a record of the sentencing proceeding should be made and preserved in such a manner that it can be transcribed as needed. The following items should be available for inclusion in a transcription:
"(i) a verbatim account of the entire sentencing proceeding, including a record of any statements in aggravation or mitigation made by the defendant, the defense attorney and the prosecuting attorney, together with any testimony received of witnesses on matters relevant to the sentence and any statements by the court explaining the sentence;
". . . . . . . . . . . . .
"6.1 Authority to reduce: general.
". . . . . . . . . . . . .
"(b) Under no circumstances should the sentencing court be authorized to increase a term of imprisonment once it has been imposed." (Pp. 21-22, 36, 37, 38.)
The section dealing with habitual offenders seems to cover anyone with a prior criminal record.
We quote also from "Standards Relating to Appellate Review of Sentences":
"2.3 Record on appeal; statement explaining sentence.
"(a) The following items should be available for inclusion in the record on appeal:
". . . . . . . . . . . . .
"(c) The sentencing judge should be required in every case to state his reasons for selecting the particular sentence imposed. Normally, this should be done for the record in the presence of the defendant at the time of sentence. . . ." (P. 42.)

*In re Candelario, supra,* 3 Cal.3d at page 706, states: "Admission of the prior offense, however, does not thereby relieve the court of its responsibility to pronounce judgment finding petitioner guilty of the substantive offense with a prior conviction, and to have such judgment entered in the official records of the court."

The permissible limits have been expressed by the court in *In re Basuino,* 22 Cal.2d 247, 250 [138 P.2d 297]: "[T]he judgment itself as actually pronounced was silent as to the prior conviction of felony. According to the record it reads: 'And no sufficient cause being shown or appearing to the Court, thereupon the Court renders its Judgment: That whereas, the said Defendant Angelo Basuino having been duly convicted in this Court of the crime of Felony, to wit: *Violating the State Narcotic Act,* It is therefore ordered, adjudged and decreed that the said Defendant Angelo Basuino be punished by imprisonment in the State Prison of the State of California; said sentence to run concurrently with sentence imposed in' (italics added) the other three causes. Obviously the court could and *should* have sentenced the petitioner for the longer maximum term; i.e., for violating the State Narcotic Act *with prior conviction of a felony,* but equally apparent is the fact that the judgment itself, if we cannot look to the remainder of the record to interpret it, refers only to the unaggravated crime of 'Violating the State Narcotic Act' and hence would carry a maximum penalty of six years' imprisonment."

The judgment as one imposing the sentence for the aggravated conviction was saved in *Basuino* because the defendant had been arraigned for judgment and the prior which he had admitted was recited as a part of the arraignment, concerning which the court said, at pages 250, 252-253: "The foregoing recitals evidence an arraignment obviously sufficient to warrant the pronouncement of a judgment carrying the ten-year maximum; i.e., for *violation of the State Narcotic Act with one prior conviction of a felony,* . . .

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"[I]f an information stated more than one offense and the defendant did not plead guilty to all the offenses charged, or if the charge as laid embraced so-called included or lesser offenses and the defendant did not plead guilty to a specific offense, the language of the judgment of conviction might well be all important as the sole means of determining the precise offense of which the defendant was convicted, but in the case before us there was no such uncertainty for the judgment to resolve. The court was not required to adjudicate any fact not in issue. [Citation.] The specific

charges of the several informations, coupled with the defendant's admission of the prior conviction and pleas of guilty to the substantive offenses, definitely establish 'of what offense the defendant was finally convicted.' So far as [concerns] . . . , the statement of the 'penalty imposed by the court,' the indeterminate sentence law has eliminated the necessity, in cases of the type here involved, for the judgment to state anything more than that the sentence is imprisonment in a specified state prison for the term prescribed by law. [Citations.] The length of the term actually to be served, within the limits of the law, is fixed at a later time by the Board of Prison Terms and Paroles."

Thus, oral articulation of the sentence imposed is required. (*In re Candelario, supra,* 3 Cal.3d 702; *In re Basuino, supra,* 22 Cal.2d 247; *People* v. *Hesbon,* 264 Cal.App.2d 846, 851 [70 Cal.Rptr. 885].)

The decisions of our courts, which are in harmony with the Standards for Criminal Justice approved by the American Bar Association, require that a defendant be informed either by formal arraignment or by the sentencing court's specific mention that the sentence imposed has in view the fact of the charged prior conviction, from which an enhanced penalty will flow.

In the present case neither of those things was done. The waiver by defendant of a formal arraignment for judgment cannot be said to apprise the defendant of what might have been recited in the arraignment.

The judgment as rendered is affirmed as to the conviction of a violation of Penal Code section 476a, and reversed as to the conviction of grand theft; the reference to the prior conviction should be stricken from the abstract and it is ordered to be stricken.

Brown (Gerald), P. J., and Cologne, J., concurred.